SAVOY, Judge.
The plaintiff filed suit against Paul Broussard and his liability insurer, St. Paul Indemnity Company, for personal injuries and damages arising out of an accident which occurred on April 3, 1961. Plaintiff alleged that as he was driving his 1957 Chevrolet pickup truck in a westerly direction along Third Street in Lake Arthur, Jefferson Davis Parish, Louisiana, he entered the intersection of Third Street and Louisiana Highway No. 26 on a green traffic light, and was struck by defendant’s vehicle, a 1956 Ford automobile, which was being driven in a northerly direction along Louisiana Highway No. 26 by Bonnie Broussard, minor daughter of Paul Brous-sard.
In their answer, defendants generally denied the allegations of plaintiff’s petition, and alleged that plaintiff entered the intersection at an excessive speed, against the traffic light, and failed to yield the right-of-way to defendant’s vehicle which had preempted the intersection. Defendants further alleged, in the alternative, that plaintiff was contributorily negligent. Additionally, a reconventional demand was made for damages to defendant’s vehicle.
The trial court rendered judgment for plaintiff in the sum of $2,381.84, rejecting the reconventional demand. Defendants appealed, and plaintiff answered the appeal, asking that the award be increased to $2,-881.84.
The record reveals chat the collision occurred at approximately 5 :30 P. M. on the date and at the place set forth in plaintiff’s petition. A three phase traffic signal light, indicating red, caution and green, is suspended over the intersection. Plaintiff’s truck reached a point just past the center of the intersection when it was struck broadside by the front of the Broussard vehicle.
Relative to the question of liability, the most substantial conflict of testimony involved the question of which driver had the green light in his favor. Plaintiff and his passenger, John E. Martin, plaintiff’s nephew, testified that they had the green light; that they saw it change to green when they were relatively close to the intersection, *823 although neither looked at the light the moment the truck entered the intersection.
A disinterested witness, Lawrence Myers, was driving his car easterly along Third Street and had stopped at the intersection to allow plaintiff to go across it before he made a left turn. He testified positively that the plaintiff had a green light prior to and at the time he entered the intersection; Opposed to this is the testimony of Bonnie Broussard who testified that the light turned green when she was approximately fifty (SO) feet away; that her car was in second gear at the time and she continued forward; she again checked the light, although she did not recall how far away she was when she looked the second time.
Janet Toups Gagneaux, a passenger in the Broussard vehicle, testified that she saw the light was green when they were about fifty (SO) feet from the intersection, but she did not look again.
Gerald Labit testified he was sitting close to the door of a cafe on the southwest corner of the intersection; heard the crash, .and immediately ran out, at which time he glanced at the vehicles and then the light, which was changing from caution to red for traffic on Louisiana Highway No. 26.
The testimony of the witnesses was carefully reviewed by the trial judge in his reasons for judgment. Although the testimony is conflicting, there is abundant evidence in the record to uphold his finding that the traffic light was green in favor of plaintiff at the time he entered the intersection.
The next question to be considered is whether plaintiff was guilty of contributory negligence. Defendants urge that, at the very least, the defendants’ evidence is of equal weight to that of plaintiff, and the Court should find both parties guilty of negligence as was done in the case of Derouen v. American Employers Insurance Company, 240 La. 486, 123 So.2d 896.
In that case, the First Circuit Court of Appeal upheld a judgment of the trial court stating that since it was not possible from the evidence to determine which driver had the red light, it was not possible to fix responsibility for the collision. The Supreme Court reversed the judgment of the district court and that of the Court of Appeal, stating that the drivers first looked at the traffic light at distances of 10 to 12 feet from the intersection, and the court held that both drivers were negligent, stating:
“ * * * Both drivers waited too long to observe the traffic light, and once they had observed the light they failed to properly continue to take notice of it. They allowed themselves to get too near to the intersection before they looked to ascertain the color of the traffic light. We, therefore, find that Mrs. Galdwin Derouen and Mrs. Whitney Maturin were not operating their vehicles as careful, prudent, and observant drivers; they did not have their vehicles under such control as to enable them to promptly obey the signals which they were bound to observe. Had they been keeping a proper lookout, they would have avoided the accident.”
The facts of the instant case are different. The plaintiff first observed the traffic light when he was a distance of approximately ISO to 200 feet from the intersection; saw it turn green when he was approximately SO to 75 feet away; and, then entered the intersection at a proper speed of 10 to 15 miles per hour. It is noted that the defendant’s vehicle was traveling at a speed estimated to be 15 to 25 miles per hour, and no brakes were applied by Miss Broussard, nor were any precautionary measures taken to avoid the accident. She testified she did not see the truck until the moment of the collision.
John E. Martin, passenger in the truck, saw the Broussard vehicle approaching *824 from a distance of 50 to 75 feet, at a time when the truck was right at the intersection, and testified that it was too late for plaintiff to do anything to avoid the accident.
Under the circumstances of the accident, even if plaintiff had seen the approaching Broussard vehicle, which he did not, he could have assumed that it would stop in obedience to the traffic light. At the time when he should have realized it would not stop, he could not have avoided the accident.
In regard to the responsibility of a motorist in approaching an intersection controlled by a traffic light, we quote from the case of Youngblood v. Robison, 239 La. 338, 118 So.2d 431:
“ * * * When an intersection is controlled by a stop sign, the motorist on the favored street, as stated in the Koob case, is entitled to indulge in the assumption that any driver approaching from the less favored street will bring his car to a complete stop before entering the intersection. Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
“This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.”
We find that the sole and proximate cause of the accident in the instant case was the negligence of the driver of the Broussard vehicle.
The next matter for determination is the quantum of damages sustained by the plaintiff.
Dr. L. E. Shirley, Sr., general practitioner, examined the plaintiff shortly after the accident. Plaintiff gave a history of being knocked unconscious for a brief period, and of being dazed. Dr. Shirley bandaged a punched out wound on plaintiff’s left arm, about the size of a dime, and gave plaintiff a tetanus antitoxin. Plaintiff had general bruises and contusions, including a knot over his left ear. He diagnosed plaintiff’s condition as a concussion and recommended a few days rest. On later examinations, the exact number unknown, the plaintiff complained of dizziness and headaches. Dr. Shirley testified these symptoms likely occur from a concussion. He estimated the plaintiff could return to work after a week of complete rest.
Dr. Harlie Bearden, general practitioner, examined plaintiff on one occasion several weeks after the accident, and consulted with him over the telephone on a few other occasions. Plaintiff gave him the same history of the accident, and complained of severe headaches, dizziness and general weakness. Also, he complained of a warm sensation over his left shoulder and arm. These symptoms increased with activity and when he got overheated. It was Dr. Bear-den’s opinion that plaintiff suffered a concussion which commonly results in headaches and dizziness which could linger for a period of several weeks or months, depending on the person and the severity of injury. Pie referred plaintiff to Dr. Joseph Edelman of Baton Rouge to determine whether there was more severe injury, as any organic brain damage or fracture, but received a negative report. He treated *825 plaintiff by giving him two medications to decrease swelling in the area of the brain and inner ear and to decrease dizziness. On the other occasions by telephone, he prescribed medicine for headaches and relief of pain.
At the instance of defendants, plaintiff was examined on November 7, 1961, by Dr. Jerome W. Ambrister, orthopedic surgeon, and Dr. Robert O. Emmett, general practitioner and surgeon, both of Lake Charles. Neither of these doctors felt the complaints of the plaintiff on that date were related to the accident of April 3, 1961.
Defendants urge that the award to plaintiff for his personal injuries should be reduced from $1,500.00 to $750.00, whereas, the plaintiff urges the award should be increased by $500.00, or to $2,000.00.
After carefully examining all of the cases cited, and considering the nature of the injuries received by plaintiff, we hold that the award by the trial court of $1,500.-00 was neither inadequate nor excessive.
Defendants point out that an award for wrecker service in the amount of $15.00 was given separately in the itemization of special damages and was also included in the estimate of repairs a second time in the amount of $20.00. This contention is well founded. The last item on the estimate of repairs is wrecker service in the amount of $20.00. Mr. Joseph Valenti testified that plaintiff paid his invoice in this amount. Plaintiff testified as to wrecker charges that, “I believe, if I remember right, it was $15.00 * * The award for special damages should therefore be decreased from $881.84 to $866.84.
For the reasons assigned, the judgment of the district court is amended so as to reduce the award from $2,381.84 to $2,366.-84, plus legal interest and costs. All costs of this appeal to be paid by the plaintiff.
Amended and affirmed.