59 So.2d 215 (1952)
SCHINDLER
v.
GAGE et al.
No. 19578.
Court of Appeal of Louisiana, Orleans.
May 26, 1952.
Adams & Reese, New Orleans, for plaintiff and appellant.
E. B. Charbonnet, Jr., New Orleans, for defendant and appellee.
McBRIDE, Judge.
Plaintiff instituted this suit for $165.65, the amount of damages which he alleges were sustained by his automobile which was in collision on the morning of April 3, 1948, with an automobile owned by Sidney R. Gage and operated by Louis J. Gage. He sought a recovery against both in solido. Certain exceptions filed by Sidney R. Gage were maintained, and he was eliminated from the suit. As to Louis J. Gage, who will sometimes be referred to hereinafter as the defendant, the case was decided on its merits and there was judgment in his favor dismissing plaintiff's suit. Plaintiff has appealed from that part of the judgment dismissing his suit against Louis J. Gage.
The accident happened at the intersection of South Claiborne and Napoleon Avenues. South Claiborne is an extremely wide boulevard running from Canal Street to the upper line of the city, and intersects Napoleon Avenue, which runs from the river in the direction of the lake, at right angles. Each of these boulevards possesses two lanes for vehicular traffic separated by a wide neutral ground, upon which are located streetcar tracks.
Schindler, the plaintiff, was driving down South Claiborne Avenue, and in attempting to cross the intersection formed by the traffic lane in which his automobile was traveling and the traffic lane on Napoleon Avenue used by traffic traveling toward the river, in which was located the Gage automobile, the cars came into collision. The front part of the Schindler automobile hit the right side of defendant's automobile toward the rear. Several acts of negligence are ascribed to defendant, and particularly the charge is made that he failed to keep a proper lookout ahead, and entered the intersection on a red light. The answer filed by Gage denies negligence on his part.
Schindler, the sole witness on his side of the case, states that he proceeded down Claiborne Avenue at about 20 miles an hour, and upon reaching a point about one block from Napoleon Avenue he noticed the signal light was showing green, but as he approached the intersection the light turned red. About 50 feet from the intersection, he applied his brakes to slow down, and it was then, according to Schindler, that the light turned amber. He states that he continued onward, and that when his *216 automobile was about 20 or 25 feet from the intersection the light signal turned to green, and as he proceeded to cross the intersection formed by the two traffic lanes, and was about 15 feet out into Napoleon Avenue, the crash took place.
Defendant, who was traveling toward the river, entered South Claiborne Avenue on a green light, and when he was somewhere in the intersection the light changed. Defendant and his passenger, one Wahden, are sure that the light turned amber when the Gage automobile was on the downtown-bound track on which a streetcar was standing, and that Gage continued to cross the intersection on the yellow light.
Schindler is sure that he did not enter the intersection until the light changed to green, and that the Gage car was running across the intersection on a red light.
Counsel for plaintiff endeavored to impeach defendant's statement that he was upon the downtown-bound streetcar track when the light turned amber, by confronting him with a statement made about two weeks after the accident to an insurance adjuster, in which Gage stated that when he was "about 25 feet from the street, on the river side, the light changed to yellow." Counsel argue that this statement reflects that Gage was about 25 feet from the roadway in which the collision occurred when the light changed, which allowed him ample time and distance to stop before reaching the intersection. We are unable to give Gage's statement the interpretation which counsel would attribute to it. At best the written statement is vague, and it seems that it could well mean that Gage was 25 feet away from the river side curb of the downtown roadway. At any rate, Gage's testimony that he was upon the downtown-bound streetcar track when the light turned to amber is fully corroborated by the testimony of Wahden, his passenger, and there being no countervailing evidence we can but accept the testimony of the two as being the truth.
Schindler states emphatically that he was traveling close to the neutral ground. He is stoutly contradicted by Gage and Wahden, who say that while Schindler was traveling close to the neutral ground, upon reaching a number of cars which were standing alongside the neutral ground waiting for the light to change to green in their favor, Schindler swerved to the right of this line of cars and heedlessly dashed into the intersection, striking the Gage car. Some argument was made as to whether the occupants of the Gage car were able to see up South Claiborne Avenue because of the stopped streetcar, but we think Wahden explained the matter satisfactorily by stating that eight or nine automobiles were in line and that the last of these automobiles was far enough behind the streetcar to permit him to see the Schindler car swerving from behind the line into about the middle of the traffic lane.
We do not think that the plaintiff has successfully borne the burden of proving that Gage was negligent. The testimony of the latter and his passenger preponderates that of plaintiff, and we are convinced that the light turned amber just as Gage was on the downtown-bound streetcar track, which was but a few feet from the intersection, and there should have been no cause for alarm on Gage's part. There certainly was nothing to lead him to believe it was not safe to continue over the intersection, in view of the fact that he was still traveling on a yellow light. It cannot be said that he should have anticipated the action of Schindler.
We feel sure that the plaintiff entered the intersection just before or at the moment that the light changed to green in his favor. His own testimony points to this as being the truth of the matter. Schindler says that while he traveled a block the light changed from green to amber then to red, then back to amber then to green again, before he reached the intersection. There can be no doubt that plaintiff was moving slowly along waiting for the light to change to green in his favor, and that he dashed into the intersection just about the time, or a little before, the light showed green.
This case is dissimilar to Lewis v. Groetsch, La.App., 32 So.2d 396, which plaintiff cites. Plaintiff was allowed to recover there, but he was half a block from the intersection when the light turned to *217 green, and we found that he was entitled to assume that before he reached the intersection there had elapsed sufficient time to allow a complete crossing of the intersection by traffic which had been caught therein by a changing light. In the Groetsch case, just as here, a streetcar was at the corner and interfered with the plaintiff's view.
In the present case, even assuming that Schindler's testimony is correct, that he entered the intersection on a green light in his favor, it is patent that he did not allow sufficient time for traffic crossing his path to clear the intersection. This he should have done.
This case involves conflicting testimony, and the lower court resolved the factual situation in defendant's favor. We agree that the conclusion of the trial judge was correctat least we find no manifest error in the judgment, and therefore
The judgment appealed from is affirmed.
Affirmed.