135 So.2d 77 (1961)
Mrs. Emma Winifred C. POTTS, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Defendants-Appellees.
No. 9607.
Court of Appeal of Louisiana, Second Circuit.
November 22, 1961.
*78 Wellborn Jack, Joseph G. Hebert, Shreveport, for appellant.
Mayer & Smith, Shreveport, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover damages sustained in an automobile collision. Involved were the taxi in which plaintiff was a passenger, a 1958 Buick owned and driven by defendant E. L. Holland, and a 1952 DeSoto owned by Rufus C. Carroll, who was accompanying his wife, Ruth Carroll, as the driver at the time of the accident. Made defendants are the Carrolls, Holland, and Holland's insurer.
A judgment by default was confirmed as to Rufus and Ruth Carroll in the sum of $676.10, but, as to Holland and his insurer, plaintiff's demands were rejected. From this judgment, plaintiff has perfected a devolutive appeal to this court.
The appeal presents, first, a question of liability as to Holland and his insurer, and, eventually, a question of quantum, particularly as against the defendants, Rufus and Ruth Carroll.
The accident occurred about 7:30 p. m., February 16, 1960, at the intersection of Linwood Avenue and Hollywood Street in the City of Shreveport. Both are paved, 4-lane thoroughfares. Linwood, extending in a general north and south course, is intersected and crossed at right angles by Hollywood. A median, or raised strip, separates the east-and westbound lanes on Hollywood. Traffic at this intersection is controlled by a single-unit conventional light *79 suspended above the center of the intersection. For traffic on Hollywood, these signals and the sequence on which they operate are as follows: "green," 23 seconds; "amber," 4 seconds; "red," 27 seconds; "red" with a "green" arrow for left-turn traffic, 6 seconds; back to "green."
The record establishes these facts:
The taxi in which plaintiff was a passenger was proceeding north on Linwood, the Holland car west on Hollywood, and the Carroll car east on Hollywood. Both drivers intended to turn south, Holland to his left and Ruth Carroll to her right, and continue in a southerly direction on Linwood. The taxi, confronted with a "red" light, came to a stop in the inner, northbound traffic lane on Linwood to await a change in signals, on the happening of which it was the intention of the driver to make a left turn into Hollywood and proceed westerly.
Holland approached the intersection from the east when the light, to him, was "red"; whereupon he reduced his speed preparatory to stopping, but, immediately prior to his arrival at the intersection, the light changed favorably for a left turn. Pursuant to such signal, Holland proceeded into the intersection and began his left-turn movement. On his reaching the center of the intersection, the "green" arrow signal went off, followed by a "green" signal for traffic generally for each direction on Hollywood.
While Holland was thus executing the aforesaid maneuver, another car, whose driver was either unknown or unidentified, was stopped in the inner, eastbound traffic lane on Hollywood. Mrs. Holland, accompanying her husband, testified that the Carroll car came from behind and to the right of this stationary car, proceeded into the intersection and struck the Holland car. The position of the Carrolls is that they came to the right of and alongside the car parked in the inner lane, stopped and awaited a favorable signal, after which they proceeded to enter the intersection for the purpose of making a right turn. This apparent conflict in testimony is without importance or significance.
The evidence further establishes that the accident occurred as Holland was about to complete his left turn and entrance into Linwood. The right rear bumper of the Holland Buick was struck by the front of Carroll's DeSoto. The DeSoto then proceeded further across Linwood, its front striking the side of the taxi, which, during the time, remained stationary.
The evidence leaves no question or room for doubt of the fault and negligence of the Carrolls. Since they neither appealed nor have answered plaintiff's appeal, that issue, however, as to them, is foreclosed. We may observe, however, with reference to this driver's negligence, that she was an inexperienced driver, had no driver's license, and was only learning to drive, being taught by her husband. Her negligence was so obvious, even to him, at the time, as to cause him to grab the steering wheel in an effort to steer the vehicle away from the Holland car in an effort to avert a collision.
Holland entered the intersection and proceeded with his left-turn movement on a proper signal for such a maneuver. Where, under such circumstances, a change of signals is effected before the left turn is completed, a motorist engaged in such a movement should have been allowed sufficient time and opportunity by approaching traffic, and, in this instance, by the driver of the Carroll car, to complete the movement even though the latter vehicle may have entered the intersection on a "green" light.
The rule is that a motorist must not enter an intersection after a "red" light turns to "green" until sufficient time is allowed for cross traffic already in the intersection to clear. Schindler v. Gage, La. App.Orleans, 1952, 59 So.2d 215; Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., La.App. 4th Cir., 1961, 125 So.2d 613.
*80 Moreover, it would appear from the record that Holland pre-empted the intersection. Pre-emption of an intersection, entitling a motorist to proceed therein and to negotiate the same, means an entry into the intersection with the opportunity of clearing the same without obstruction of the path of other vehicles operating under normal and reasonable circumstances and conditions. Butler v. O'Neal, La.App. 2d Cir., 1946, 26 So.2d 753; Aucoin v. Houston Fire & Casualty Co., La.App. 1st Cir., 1950, 44 So.2d 127; Hooper v. Toye Bros. Yellow Cab Co., La.App. Orleans, 1951, 50 So.2d 829; Harris v. Travelers Indemnity Co. of Hartford, Conn., La.App. 2d Cir., 1954 (writs denied), 70 So.2d 235; Broughton v. Touchstone, La.App. 2d Cir., 1953, 72 So.2d 552; Evans v. Walker, La. App. 2d Cir., 1959, 111 So.2d 885.
Thus, the deduction can only be made from these principles and under the facts established to exist here that, when Holland entered the intersection on a favored traffic signal but failed to completely negotiate it before the signal changed, he did so with a reasonable expectation and opportunity of completing it without the obstruction of normal traffic, and that he is, therefore, not guilty of negligence.
And, it may be properly observed that the entry of the Carroll vehicle into the intersection in the instant case was not under normal and reasonable circumstances and conditions, although on a favorable signal, for Holland had previously entered and pre-empted the intersection.
Plaintiff contends, however, that under the language employed in a city ordinance, Shreveport City Code, p. 226, "Motor Vehicles and Traffic," Sec. 19-18., "Trafficcontrol signal legend," a greater duty in excess of that herein indicated was imposed upon Holland. The language relied upon is as follows:
"Whenever traffic is controlled by traffic-control signals exhibiting the words `Go,' `Caution' or `Stop,' or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used and such terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
* * * * * *
"(d) Red with arrow.
"(1) Vehicular traffic facing such signal may cautiously enter the intersection only to make the movement indicated by such arrow but shall yield the right of way to pedestrians lawfully within a crosswalk and to other traffic lawfully using the intersection. * * " (Emphasis supplied.)
We are unable to so construe the ordinance or to give it the effect urged. Other than possibly emphasizing the duty of a motorist in connection with the movements indicated, the ordinance does not add or detract from the effect of the law and the rules established in the jurisprudence to which we have heretofore referred.
Moreover, the ordinance provides that a motorist attempting a left turn shall yield the right of way to other traffic lawfully using the intersection. As heretofore pointed out, Holland had pre-empted the intersection and had begun a left-turn movement pursuant to a signal indicating that such movement might be made, and, therefore, the entrance of the Carroll vehicle into the intersection without allowing sufficient time and opportunity for the Holland vehicle to complete its negotiation of the intersection was unlawful.
From our review and study of the record, we find ourselves in accord with the trial court's findings and conclusions on the questions of fault and liability of the defendants.
Lastly and finally for consideration is the question of quantum of the award as made against the defendants, Rufus and Ruth Carroll. Even though plaintiff concedes that the award as made was influenced by a *81 consideration of defendants' inability to pay, she submits, even under such a consideration, the award is inadequate and should be increased.
From the record, it appears that plaintiff did not, at first, realize that she was injured. She proceeded in the taxi to her residence. On entering her home, it was discovered that her left ear was lacerated and that considerable of her clothing was covered with blood. On calling another taxi, she proceeded to the taxi office where she reported her accident and injuries; she then reported to Dr. Norman Lee Mauroner at a local hospital where the laceration was sutured, x-rays were made, and an injection for tetanus was administered. Plaintiff testified that, by the accident, she was jolted from one side of the taxi to the other with her head hitting on her left shoulder. On reaching the doctor's office, she was emotionally upset and experiencing pain in the left side of her head and neck. The doctor's opinion was that it was reasonable to expect the injury to produce the pain plaintiff described. The doctor noted some spasm of the cervical musculature with some loss of the normal cervical curve, as disclosed by the x-rays.
Plaintiff developed an allergic-type reaction to the tetanus toxoid. This was first noted on February 19th. Because of this, injections of a cortisone type of medication, to neutralize the adverse effect of the tetanus serum, were administered on February 19th, 20th, and 22d. Plaintiff was also experiencing, on these occasions, headaches, relief of which was sought by the use of aspirin. Similar complaints were made March 22, 1960, for which she was given penicillin. No complaints were noted on or after April 4, 1960.
Thus, the evidence establishes that plaintiff, following the accident, experienced nervous anxiety and became emotionally upset and, in the accident, sustained a laceration of the rear portion of the left ear, experienced a toxic reaction to a tetanus shot, became hyperesthetic, and experienced infrequent but, nevertheless, sharp pains in her ear. The evidence leaves no doubt that plaintiff, for some considerable period, experienced pain and discomfort as a result of the injuries sustained and from the treatment administered.
Even considering defendants' impecunious position, an award of $1,000.00 for the injuries inflicted and the pain and suffering endured would not appear excessive. In addition, plaintiff is entitled to be reimbursed medical expenses in the sum of $109.50 and for loss of wages of $13.32.
Accordingly, the judgment appealed is amended by increasing the award to $1,122.82 and, as thus amended, it is affirmed at the cost of defendants-appellees.
Amended and affirmed.