CECIL C. CUTRER, Judge pro tem.
This suit docketed as No. 437 in our Court, along with No. 438, Barra v. Williams, La., 144 So.2d 741, arose as a result of an intersectional collision between a vehicle driven by Warren Bowman and another vehicle driven by Charles Williams, the minor son of Bert Williams, the defendant in both of these suits. In suit No. 437 Warren Bowman and his insurer, Washington Fire & Marine Insurance Company, sued for the amount of property damage inflicted upon Bowman’s automobile. In suit No. 438 Mrs. Catherine Barra, who was a guest passenger in the. Bowman car, at the time the accident occurred, sues for personal injuries received as a result of the collision. These two suits were consolidated below for trial.
After submission of all the evidence, the trial judge found both drivers, Warren Bowman and Charles Williams, to have been negligent. However, as to Mrs. Bar-ra, the court found her free of contributory negligence. Accordingly, judgment was rendered dismissing the suit brought by Washington Fire & Marine Insurance and its insured, Warren Bowman, but awarding judgment in favor of Mrs. Barra against defendant, Bert Williams, rendering judgment in the sum of $386.00. From these judgments plaintiff in suit No. 437, as well as defendant in suit No. 438, have-prosecuted these appeals.
*738 Defendant Williams, appellee in suit No. 437 and appellant in suit No. 438, does not question the trial judge’s determination that his minor son, Charles Williams, was negligent nor that he, as the parent of Charles Williams, is liable for the torts committed by him. In suit No. 437 he merely seeks an affirmance of the trial court’s decision that plaintiff’s suit therein should be dismissed due to the insured’s contributory negligence. In No. 438 he seeks a reversal of the lower court’s judgment on the ground that Mrs. Catherine Barra, the injured guest passenger, has, by her failure to join Warren Bowman, her host driver, with defendant as a joint tort-feasor in this action, released and abandoned any claim against Warren Bowman without reservation. Defendant Williams urges that this failure to join Bowman is tantamount to a tacit release of his alleged joint tort-feasor, Bowman, and due to her failure to reserve her rights against defendant Williams, Mrs. Barra has also abandoned and released defendant from all liability. Williams contends that joint tort-feasors are bound in solido and hence a release as to one, without reservation, is a release as to all. It is obvious that defendant’s whole argument on appeal in No. 438, outlined above, is predicated on the assumption that the trial judge’s determination in No. 437, that Warren Bowman was contributor-ily negligent, is correct. Otherwise Bowman would not in any way have contributed to Mrs. Barra’s injuries and hence would not be a joint tort-feasor with defendant Williams and bound in solido with Williams to Mrs. Barra for the amount of damages she sustained.
That Warren Bowman was not negligent in any way, is exactly the position taken by Washington Fire & Marine and its insured, Bowman, on the appeal taken from the judgment rendered below, No. 437. They contend that the trial judge erred in determining that Warren Bowman was contribu-torily negligent and accordingly pray that we reverse this portion of the decision and cast defendant Williams for the amount of damage done to Bowman’s car. Thus, it is apparent that a decision by us reversing the trial judge’s determination of negligence on the part of Bowman in No. 437 disposes automatically of defendant Williams’ contention in suit No. 438.
Turning now to the undisputed facts as elicited in the consolidated trial of these two matters below, we find that the accident occurred at approximately 2:00 a. m. on November 23, 1958, in the City of New Orleans at the intersection of Canal Street and Claiborne Avenue. Immediately prior to the collision, Charles Williams, the minor son of the defendant, Bert Williams, was proceeding up Canal Street towards the lake as he approached the intersection. He had as passengers, in the borrowed car he was driving, Miss Myrna Dahmer, his date who was seated in the front seat with him, and Mr. Chester Dickey, and Miss Jerry Sollieau, both of whom were seated in the rear seat. At approximately the same time Warren Bowman was approaching the intersection on Claiborne Avenue, from Williams’ left. Mr. Bowman was accompanied by his wife and Mrs. Catherine Barra, who were seated in the front, and by Mr. and Mrs. Willie Williams, who were seated in the rear. The intersection of Canal and Claiborne is controlled by a semaphore traffic light.
 From this point forward, the evidence is in considerable conflict. Both drivers testify that they each had the green light and each is corroborated to a greater or lesser extent by the passengers in their respective vehicles. The trial judge found that the light was changing or had just changed immediately prior to the collision. However, the reasons he orally assigned for his judgments here does not indicate in whose favor the light had changed, he being of the opinion that it would make no difference in the outcome since each had ample opportunity to avoid the accident had they but kept a proper lookout for each other. With all due respect to our learned brother below, we feel that under the recent *739 decision of Youngblood v. Robison, 118 So.2d 431, 239 La. 338, 118 So.2d 431, it is crucial that a determination be made, if possible, as to which driver the light favored since by virtue of the Youngblood decision, it is not necessary for one traversing an intersection on a green semaphore light to look to the left or the right before entering. The trial judge concluded that both drivers were negligent in that each had reasonable opportunity to observe the other and avoid the accident had they been keeping a proper lookout. But, as stated by Justice McCaleb, the organ of the Court in the Youngblood case,
“ * * * when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.”
With this in mind, we turn to the testimony of the two drivers involved in this collision, Charles Williams and Warren Bowman, and find them diametrically opposed as to the condition of the light at the time the accident occurred, each contending that the light favored him. Charles Williams testified that he was proceeding up Canal Street towards the lake for the purpose of bringing his date home. Mr. Williams and his date, Miss Myrna Dahmer, along with Mr. Chester Dickey and his date, Miss Jerry Sollieau, had just left the revels which usually follow the LSU-Tulane football game in the French Quarter of the City. However, Mr. Williams, as well as Miss Dahmer and Miss Sollieau, all testified that they had consumed only two or three drinks the whole evening. Mr. Williams stated that he was traveling at a speed of 20 to 25 miles per hour until he was one-half block away from the accident intersection at which time the light was green for traffic proceeding up Canal Street. He again observed the light to be green at a distance of a quarter of a block from the intersection and stated that upon reaching the intersection itself, he crossed without slackening his speed since he observed the light to be still green in his favor at that time. Mr. Williams testified that the first time he saw Bowman’s vehicle was when the front of his vehicle had reached and entered the actual intersection, at which point the Bowman vehicle was in the process of traversing the area adjoining the neutral ground which divides Canal Street. It was by then, of course, too late for him to avoid the accident. The Bowman vehicle hit the Williams automobile in the center of the left side, the point of impact being located in the uptown-lake quadrant of the intersection. Considering the small amount of damage sustained by each vehicle and the relatively small distances traveled by them after impact we conclude that neither vehicle could have been traveling at an excessive rate of speed.
Miss Jerry 'Sollieau corroborated Mr. Williams on almost every point of his testimony and particularly on the crucial fact that the light was green in his favor. Miss Sollieau testified that she first saw the Bowman car when the Williams vehicle was approximately two car lengths from the intersection at which time she noticed, from her position in the back seat, that the light was green for Williams, Miss Myrna Dah-mer, however, who was seated in the front seat, testified that Williams did not have a green light until he was almost in the intersection. Miss Dahmer testified that Williams had a red light and was slowing up to stop until a few feet from the intersection when the light abruptly changed to green in his favor. Williams then accelerated and started to cross, but was struck by the Bowman car, traveling at an estimated speed of 30 miles per hour.
Warren Bowman, however, tells an entirely different version of the events immediately preceding and leading up to the collision in question. Bowman testified that he had picked up his wife and Mr. and Mrs. Willie Williams, and Mrs. Catherine Barra from a church supper and that he and his wife were proceeding to take them home *740 when they reached the intersection of Canal and Claiborne. Bowman testified that when he reached the intersection the light was red and he accordingly stopped his vehicle in the left hand lane nearest the neutral ground on Claiborne until the light changed to green. Bowman then started to cross the intersection at which point someone in the front seat, either Mrs. Barra or his wife, warned Bowman to be careful of the approaching Williams car. To which Bowman replied that it was “O. K.” because he had the green light in his favor. Bowman states that the Williams car then disappeared behind a line of two or three cars, stopped in the left lane nearest the neutral ground on Canal and it was not until he, Bowman, had nearly completed traversing the area adjoining the neutral ground separating Canal Street that he again sighted the Williams vehicle which, at that point, was traveling at a speed of 25 to 30 miles per hour and entering the intersection. Bowman thereupon immediately applied his brakes, but to no avail. Bowman testified that immediately after impact he observed that the light was still green in his favor and against Williams.
Bowman’s version of what occurred is corroborated on all material points by the testimony of the four passengers in his vehicle who each gave versions of what transpired almost identical to his. Moreover a version of what occurred almost identical to Bowman’s and the passengers in his vehicle was given by Morris Powers, employed as an attendant at a service station located on the uptown-river corner of the Canal and Claiborne intersection. On the night of the accident Mr. Powers was standing on that corner facing the Claiborne Towers, smoking a cigarette, when he heard the screech of brakes. He immediately looked to his right across Canal Street and saw that a collision had occurred between the Bowman and Williams vehicles. He testified positively and without qualification that the light for traffic on Claiborne going in the direction Bowman was traveling remained green for not less than six seconds and not more than fifteen seconds after the collision before turning yellow.
The testimony of this disinterested eye witness, coupled with that given by the four passengers in Bowman’s vehicle, and the fact that the Bowman vehicle traveled across Canal Street, approximately 90 feet, before reaching the point of impact, all lead to the inescapable conclusion that Bowman’s version of what occurred is an accurate reflection of the facts. Our characterization of Morris Powers as a disinterested witness might be questioned in view of the fact that he was the co-employee with Willie Williams, one of the passengers in the Bowman vehicle and that he knew Bowman by sight. However, the record clearly shows that although Powers recognized Bowman in court he could not even identify him by name and we are not prepared to say that this witness’s testimony should be ignored merely on the ground that he worked, not with one of the litigants, but with a passenger in one of the litigant’s cars.
Therefore, we conclude that Warren Bowman was, by his conduct, in no way con-tributorily negligent. We find that Mr. Bowman upon observing the Williams vehicle approaching the intersection merely indulged in the presumption the law affords favored drivers traversing intersections controlled by electric semaphore lights that other motorists, faced with a red light, will see and obey the signal for them to stop. At the moment it became apparent that Williams did not intend to obey, but was going to cross against the light, Mr. Bowman immediately applied his brakes, but by then it was beyond anyone’s power to avoid the accident.
Although the issue was not raised by counsel in their briefs on appeal, we might add that we do not believe the decision in Derouen v. American Employers’ Insurance Company, 240 La. 486, 123 So.2d 896, to be applicable to the facts of this case since it is clear that the doctrine of the Derouen *741 case only applies where the drivers of the respective vehicles approaching a controlled intersection fail to seasonably observe the traffic light at a distance sufficiently removed from the intersection to allow them to adjust to changes of the light. (See Martin v. Broussard & St. Paul Indemnity Co., La.App., 142 So.2d 821.)
For the reasons assigned above the judgment rendered by the lower court in the matter entitled Washington Fire and Marine Insurance Company, et al. v. Bert Williams, is hereby reversed and accordingly, judgment is rendered herein against the defendant and in favor of Washington Fire and Marine Insurance Company in the amount of $86.47 and in favor of Warren Bowman in the amount of $100.00, at ap-pellee’s cost.
Judgment reversed.