LANDRY, Judge.
This present action and the suit entitled LaBauve v. Fidelity & Casualty Company of New York, La.App., 151 So.2d 130, arise from a common intersectional automobile •collision. Both said actions were consoli•dated for trial below as well as appeal to this court.
The accident which gave rise to the suit and counter suit herein involved occurred •on the morning of November 13, 1961, at •approximately 8:05 o’clock, at which time a 1957 Ford automobile belonging to plaintiff, Douglas Allen, and being driven by his -daughter, Sally, was in collision with a 1955 Ghevrolet owned by John LaBauve and being operated by his wife, Mary LaBauve, the aforesaid accident occurring in the intersection formed by Government Street and South Acadian Throughway, Baton Rouge, Louisiana.
The present plaintiff, Douglas Allen, seeks recovery of monetary judgment in the sum of $350.41 from defendant, State Farm Mutual Automobile Insurance Co., (liability insurer of the LaBauve vehicle), for damages allegedly sustained by plaintiff’s Ford in the aforesaid collision. In Suit Number 5769 plaintiff LaBauve prays for judgment against defendant, The Fidelity & Casualty Company of New York (Allen’s liability insurer), in the amount of $235.46, said sum being allegedly expended by LaBauve in effecting repairs to his said vehicle necessitated by the accident in question.
Our esteemed brother below rejected and dismissed the claim of plaintiff, Douglas Allen, in Suit Number 5768 and in Suit Number 5769 rendered judgment in favor of plaintiff, John A. LaBauve, and against defendant, The Fidelity and Casualty Company of New York, in the sum prayed for therein. From said adverse decrees plaintiff, Douglas Allen, and his aforesaid insurer have appealed.
No witnesses were summoned herein on behalf of any of the parties presently before the court. By stipulation of counsel appearing in the record, the instant actions were submitted to the Honorable Trial Court upon an agreed statement of facts which admittedly concisely describes the details of the accident. The pertinent portions of said agreed stipulation of facts, which forms a part of the record, read in full as follows:
"1.
“That the investigation report of the Baton Rouge Police Department pertaining to the accident involved in these suits, filed in evidence as Exhibit 1, accurately reflects the facts .to which the investigation officers would have testified had they personally appeared as witnesses on the trial of this case.
***** *
3.
“That the following is agreed to be the facts elicited on the testimony of Mrs. Mary LaBauve and Miss Sally Allen: “Miss Allen, traveling west on Government Street in the innermost lane, entered the intersection on a green light. Before the front of her automobile reached the center of the intersection, she stopped at a point where she could no longer see the traffic light to allow an oncoming automobile to make a left turn in front of her. While she was stopped, the light for west-bound traffic on Government Street changed from green to red. After this car had cleared her path, she commenced traveling forward through the intersection.
“Mrs. LaBauve was traveling south on Acadian Throughway in the outside lane. There was a line of cars to her left, stopped in the inside southbound *124 traffic lane of Acadian Throughway. Before she reached the intersection she observed that the traffic light turned green for southbound traffic. She continued at the same rate of speed into the intersection where the front of her car struck the side of the Allen automobile.
“When the light changed, the first southbound car in line in the inside lane on Acadian started forward and went around behind the Allen automobile. The stopped line of cars had prevented Mrs. LaBauve from seeing the Allen automobile until the moment of collision.
“Government Street is a four lane street and Acadian Throughway is a six lane street each with an equal number of lanes going in each direction.”
The basis of the instant appeals is the contention of appellants that the learned trial court erred in the following respects, namely: (1) in relieving Mrs. LaBauve of liability predicated upon the principle that a motorist approaching a favorable traffic signal does not have the duty of observing the presence of vehicles lawfully proceeding through an intersection pursuant to the pronouncements in Bryant v. Ouachita Coca Cola Bottling Company, 239 La. 83, 117 So. 2d 919 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431; and (2) in holding that although the driver of the Ford automobile entered the intersection on a green light, she did not have the right to proceed through the intersection after the light changed which ruling is contrary to the jurisprudence as established, inter alia, by Potts v. United States Fidelity & Guaranty Co., et al., La.App., 136 So.2d 77; Dupuy v. Maury, La.App., 136 So.2d 302; and Schindler v. Gage, La.App., 59 So.2d 215.
Tersely stated, appellants’ position is that Miss Allen was free of negligence inasmuch as she entered the intersection on a favorable light which accorded her the right to complete the crossing, of the intersection notwithstanding the light changed to favor opposing traffic before she had in fact completed such crossing. Predicated upon the aforesaid premise appellants maintain that Miss Allen lawfully preempted the intersection with the result that opposing traffic was. obligated to yield the right of way to her and stop, if necessary, to permit her passage through the junction in question.
Appellees maintain, however, the trial court correctly applied the rule enunciated' in the Bryant and Youngblood cases, supra,, to the effect that a motorist entering an intersection on a favorable light is required' to look neither to the right nor left and is-not deemed guilty of negligence for failure to observe a motorist traversing the intersection on an unfavorable traffic light.
In support of the contention that a motorist entering an intersection on a green light is entitled to complete his crossing thereof despite the light changing to favor opposing traffic before the crossing is completed, learned counsel for appellants has cited the following ¡authorities: Schindler v. Gage, La.App., 59 So.2d 215; Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., La. App., 125 So.2d 613; Potts v. United States Fidelity & Guaranty Co., et al., La.App., 135 So.2d 77; Dupuy v. Maury, La.App., 136 So.2d 302, and Lloyd v. Marquette Casualty Co., La.App., 142 So.2d 621.
Esteemed counsel for appellees, in addition to the Bryant and Youngblood decisions, supra, relies upon Washington Fire & Marine Insurance Co. v. Williams, La.App., 144 So.2d 737, recently decided by our brothers of the Fourth Circuit. In addition, learned counsel for appellants stoutly maintain that the line of jurisprudence cited' and relied upon by appellants is clearly distinguishable from that relied upon by appellees on the ground that all of appellants’ authorities involve instances wherein vehicles proceeded into an intersection from a stopped position and none involved continuous moving vehicles as is the case in the instant matters.
In Schindler v. Gage, La.App., 59 So.2d 215, the accident occurred at the intersection *125 of South Claiborne and Napoleon Avenues, New Orleans. Each of said thoroughfares consisted of four lanes of travel separated by a wide neutral ground containing street car tracks. Schindler was driving toward Canal Street on South Claiborne while Gage was proceeding along Napoleon towards the Mississippi River and the accident occurred when the front of Schindler’s vehicle struck the right side of the Gage automobile. The court found that Schindler entered the intersection just before or at the moment the light turned green and after proceeding about IS feet into the intersection struck the Gage car. It was further found that defendant Gage entered South Claiborne when the light was green but that the light changed to red when he was in the intersection. In denying Schindler recovery the court stated that assuming Schindler entered the intersection on a green light as he contended, nevertheless, he was guilty of negligence in failing to allow time for traffic in the intersection to clear.
Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., La.App., 125 So.2d 613, involved an accident which occurred at the intersection of Labarre Road (a two lane highway) and Airline Highway consisting of eight lanes of travel. Plaintiff’s truck, traveling on Labarre Road, entered Airline Highway on a green light which turned red before the truck completed its crossing. Defendant’s vehicle started from a parked position on Airline when the light changed and struck plaintiff’s vehicle. The court therein held that since plaintiff’s vehicle entered on a favorable light, it was entitled to complete its crossing even though the light changed before the crossing was completed. The court also cited with approval the Schindler case, supra, to the effect that a motorist must not enter an intersection after a red light turns green until sufficient time is allowed to permit vehicles within the intersection to clear the crossing.
In Potts v. U. S. Fidelity and Guaranty Co., La.App., 135 So.2d 77, an intersectional collision occurred at the junction of Linwood and Hollywood, Shreveport, Louisiana, both being four lane thoroughfares— Linwood running north and south and Hollywood coursing east to west. Plaintiff was a passenger in a taxi proceeding northerly on Linwood. Defendant’s insured, Holland, was proceeding West on Hollywood and at the same time one Carroll was traveling East on Hollywood, both Holland and Carroll intending to turn south at Linwood. Plaintiff’s taxi, confronted with a red or stop light, came to a halt in the inner northbound lane on Linwood to await a favorable signal to turn left and proceed westerly on Hollywood. Holland, approaching from the East was confronted with a red light which induced him to reduce his speed preparatory to stopping but immediately prior to his arrival at the intersection, the light changed favorably for a left turn pursuant to which Holland continued into the intersection and began to turn left. Upon Holland reaching the center of the intersection the green left turn arrow signal changed to green or go for traffic facing in each direction on Hollywood. While Holland was executing his turn as aforesaid an unidentified vehicle was stopped in the inner eastbound lane on Hollywood. The Carroll vehicle came from behind and to the right of the unidentified vehicle, proceeded into the intersection and struck the Holland automobile. Carroll maintained, however, he pulled to the right of the stationary vehicle, waited for a favorable signal and proceeded forward. In holding the driver of the Carroll vehicle responsible for the accident, the court stated that since Holland entered the intersection on a favorable signal he should have been permitted to proceed. Upon the authority of the Schindler and Gage cases, the court held that a motorist must not enter an intersection when a light turns green until traffic already in the intersection is given a chance to clear.
Dupuy v. Maury, La.App., 136 So.2d 302, also involved an accident which occurred at the intersection of Labarre Road and Airline Highway near the outskirts of the City of New Orleans. Plaintiff therein was proceeding toward New Orleans traveling *126 in the third or next to outside lane for New Orleans bound traffic. Defendant entered the intersection from plaintiff’s left on a green light but his progress was delayed and the light changed to red before defendant could complete his crossing. When the light turned to green for New Orleans bound traffic, vehicles in the first and second inside lanes started forward but, upon observing defendant’s vehicle, stopped. Plaintiff, however, did not note the presence of defendant’s vehicle and proceeded forward striking defendant’s automobile on its right side. The court therein denied plaintiff recovery on the ground that a car stopped for a traffic light must first look and permit traffic in an intersection to proceed before going forward after a signal change.
In Lloyd v. Marquette Casualty Company, La.App., 142 So.2d 621, the collision occurred at the intersection of South Broad and Washington Avenues in the City of New Orleans. At the aforesaid intersection both streets are wide double laned traffic arteries divided by neutral grounds. Wells (driving the Lloyd vehicle) was proceeding on Washington Avenue towards the Mississippi River. He entered the intersection on a green light and crossed one roadway of Broad and the neutral ground while the light was still green, but while he was traversing the second roadway the light changed.
Meanwhile, Monsour (driving the Brous-sard vehicle) was driving along Broad toward Canal Street. As he reached the intersection the light turned to red whereupon he stopped. When the light turned green, Monsour accelerated immediately without first ascertaining that all the traffic proceeding on Washington Avenue had cleared the intersection. When Monsour proceeded approximately ten feet into the intersection his vehicle struck the right rear bumper of the Lloyd automobile. The court affirmed the decision of the trial court which held that the sole cause of the accident was Mon-sour’s negligence in failing to ascertain that all traffic in Washington Avenue, which had entered on a favorable signal, had cleared the intersection before he started his vehicle forward.
It is quite true, as contended by esteemed counsel for appellees, that the appellate courts of this state have expressly held that it is not necessary for a motorist entering an intersection on a green light to look either right or left before entering and that a motorist so proceeding is not guilty of negligence. Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919; Youngblood v. Robison, 239 La. 338, 118 So.2d 431. We observe, however, with considerable interest, the existence of certain salient circumstances which clearly distinguish the Bryant and Youngblood cases, supra, from the case at bar.
In the Bryant case, supra, plaintiff, a guest passenger in a car being driven by Mrs. Simmons, sued for damages for personal injuries sustained in the collision. It appears that the court therein found that plaintiff’s host driver proceeded into the intersection illegally or upon an unfavorable traffic signal. While finding that defendant’s driver, Adams, had proceeded into the intersection on a green light with respect to plaintiff’s host driver, the court stated :
“Both lower courts found that Mrs. Simmons drove her 1948 Plymouth Sedan into the intersection just before the semaphore light turned green on Louisville Avenue; that she ‘jumped the Gun’ so to speak. They found her negligent in proceeding into the intersection at the time she did.”
In the Youngblood case it was found that defendant Robison drove his vehicle into the intersection at an excessive rate of speed contrary to an unfavorable traffic signal after Dr. Guice had entered the same intersection at a lawful speed and upon a favorable traffic signal.
Our examination of Washington Fire & Marine Insurance Co. v. Williams, La.App., 144 So.2d 737, reveals that the court therein found that Bowman (who was permitted recovery) entered the intersection on a favorable signal after having stopped and that *127 Williams, the driver of the other vehicle, entered the intersection after the light had changed to red for traffic approaching from his direction.
We do not subscribe to the principle advocated by learned counsel for ap-pellee to the effect that the jurisprudence holding that a motorist lawfully entering an intersection on a favorable light is given the right to proceed, despite the light’s subsequent change to an unfavorable signal before the crossing is completed, is limited in scope and application to those cases wherein such vehicle is involved in a collision with another vehicle which proceeded into the intersection from a stopped position and that the aforesaid rule is without application as respects continuously moving vehicles entering an intersection. We believe that common sense and good judgment require the rule’s application to vehicles starting from a stopped position as well as to continuously moving vehicles alike. We believe the key to the seeming conflict in the two rules involved, namely, the right of the motorist entering on a favorable signal to proceed despite a change in signal and the right of a party faced with a go signal to proceed without looking to right or left, is that the smooth and orderly flow of traffic requires that all vehicles lawfully within an intersection when a light change occurs must be afforded an opportunity to clear and must be permitted to pass through by all opposing vehicles whether stationary or in motion, provided the driver of the crossing vehicle continues his crossing in a careful and orderly manner, with due dispatch and with careful attention to and observation of opposing traffic which may be expected to proceed upon the changing of the traffic signal.
In the judgment of this court, the orderly, continuous, unimpeded flow of traffic on our present day heavily congested thoroughfares and main arteries of travel requires that a motorist who proceeds into an intersection on a favorable light and stops within the intersection and then proceeds forward again after the light has changed to a favorable or “go” signal for opposing traffic incurs the onus of offering plausible reason or excuse for his stopping.
Under such circumstances stopping is negligence per se unless necessitated by an unforeseen emergency compelling such action. Such an unorthodox maneuver can only be justified by unexpected exigencies over which the motorist has no control such as, but not limited to, sudden and irregular movement of another vehicle requiring that a stop be made to avoid an accident, or sudden engine failure or unexpected mechanical difficulty requiring further movement impossible.
Jn the case at bar the police report, introduced in evidence in lieu of the testimony of the investigating officers, contains the following statement:
“ -+• * * the vehicle traveling West on Government St. (Veh. #1) had entered the intersection on a green light and was unable to go through the intersection due to an unknown veh. was blocking her lane of traffic attempting to make a left hand turn on to N. Acadian Thru, (sic)” (Emphasis supplied)
The present record therefore, reveals that Miss Allen made an emergency stop in the intersection after having lawfully entered it. The signal light changed while she was stopped in the intersection thus placing her in a position of imminent peril for which she herself was not responsible. Even if Miss Allen were able to observe the signal light change—and from the police report it appears that she could not see the signal light directly above her—it cannot be concluded, under the circumstances, that she had a duty to remain in the path of northbound traffic rather than proceed to clear the intersection as she attempted to do. Considering the position in which she was thus placed through no fault of her own, it is obvious that she would not again be in a safe position until either the light changed to a favorable “go” signal or she. *128 cleared the intersection. From the record it appears that at least the extreme inside lane of opposing- traffic remained halted to permit her clearing the intersection. Under such circumstances it appears that she was not negligent in assuming that all opposing traffic would honor her lawful preemption of the intersection and yield the right of way in order that she might complete her passage through the intersection without incident. From the record it appears that neither Miss Allen nor Mrs. LaBauve could see the other because of the stationary vehicles in the inside southbound lane of South Acadian Throughway. Be that as it may, however, the vehicles in the inside lane blocked Miss Allen’s view of Mrs. LaBauve as well as they impeded Mrs. LaBauve’s ability to observe the presence of Miss Allen.
Having lawfully entered the intersection and having stopped only because she was confronted with an emergency over which she had no control, Miss Allen had the right of way and was entitled to assume that opposing vehicles would not enter the intersection until she had completed her crossing.
While Mrs. LaBauve could reasonably anticipate that no traffic would enter the intersection unlawfully or upon improper or unfavorable signal, she nevertheless is charged with seeing what was already in the intersection which she intended to enter. When Mrs. LaBauve noticed the signal light change from red to green, she should have anticipated that opposing traffic lawfully in the six-lane intersection might not have cleared it.
Under the circumstances revealed by the agreed stipulation of facts and the police report on which this matter was submitted for resolution, we conclude that the instant litigation is controlled by the rule enunciated in Schindler v. Gage, La.App., 59 So.2d 215; Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., La.App., 125 So.2d 613; Potts v. United States Fidelity & Guaranty Co., et al., La.App., 135 So.2d 77; Dupuy v. Maury, La.App., 136 So.2d 302; and Lloyd v. Marquette Casualty Co., La.App., 142 So.2d 621.
We further conclude that the sole proximate cause of the accident in question was the negligence of Mrs. LaBauve in failing to reduce her speed and failure to observe the traffic caught in the intersection upon the change of the signal.
For the reasons hereinabove assigned, it is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby reversed and judgment rendered herein in favor of plaintiff, Douglas Allen, and against defendant, State Farm Mutual Automobile Insurance Co., in the full sum of $350.41, together with legal interest thereon from date of judicial demand, until paid. All costs in the lower court as well as the costs of this appeal to be paid by defendant herein, State Farm Mutual Automobile Insurance Co.
Reversed and rendered.