HERGET, Judge.
From a judgment in favor of plaintiff, Samuel F. Schoonmaker, against defendants, David I. Perkins and The Insurance Company of the State of Pennsylvania (the liability insurer of Perkins’ employer, the Department of Public Safety, State of Louisiana) for the sum of $6,196.32, Defendants appealed.
Plaintiff answered the appeal praying that the judgment be increased to $17,-272.21.
The suit arises out of an intersectional collision which occurred on the morning of January 19, 1961 at Acadian Throughway and Florida Street in the City of Baton Rouge. On the morning of the accident it had been raining and the streets were wet. Acadian Throughway is a six lane artery of commerce bearing northerly-southerly with three lanes for traffic in each direction. Florida Street is a four lane street traversing easterly-westerly with equal lanes for traffic in each direction. The intersection is controlled for traffic by a semaphore light.
Plaintiff’s testimony was that he was proceeding in a southerly direction. Upon reaching the intersection, described and. referred to supra, he stopped his vehicle in the westernmost lane of Acadian Throughway because the traffic light facing him commanded him to do so. To the left of Plaintiff were two motorists occupying the other lanes for southbound *84 traffic who likewise obediently stopped at the intersection.
According to the testimony of defendant Perkins, he was traveling west on the inside lane, or southernmost lane, of the two lanes allowed for westerly travel on Florida Street at a rate of speed estimated to be between 25-35 miles per hour. Upon reaching a point about ten feet from the intersection the semaphore light, located approximately in the center of the intersecting streets, changed from green to amber facing him and upon observing the vehicles stopped on Acadian Throughway he accelerated his vehicle and attempted to cross the intersection.
Mr. Wallace Goetzman, a witness to the accident, testified he was in the innermost lane for southbound traffic on Acadian Throughway. When the light signalled green in his favor he proceeded forward but upon observing Perkins’ car moving forward into the intersection when the signal light indicated red for Perkins, Goetzman stopped his vehicle. Likewise, the Plaintiff, upon being favored with a green light, without observing traffic to his right or left, went forward and not having observed the Perkins vehicle collided with same at a point the investigating police officers fixed at 14 feet south of the north parallel line of Florida Street and 8 feet east of the west parallel line of Acadian Throughway.
Mr. Frank C. Taylor testified as a witness on behalf of Plaintiff. He stated he was traveling in an easterly direction on Florida Street and had stopped at the intersection because he was faced with a red light. After Perkins’ vehicle was in collision with Schoonmaker’s it struck the Taylor vehicle while so stopped. It was Mr. Taylor’s testimony that he was in this stopped position when he observed the westbound Perkins vehicle enter the intersection.
Mr. Michael Plonk testified he was immediately behind the Taylor vehicle and, though he was approaching the intersection and moving at the time of the collisions, he was certain Mr. Perkins entered the intersection on a red light.
It was stipulated the cycle of the semaphore was set so that the signal would remain on the amber light for three and a half seconds. Attributing to the Perkins vehicle a speed of 30 miles per hour, it would travel 44 feet per second. If Mr. Perkins were correct in his testimony that he was only 10 feet from the intersection when the light cycle changed to amber, he would have traversed 154 feet and, accordingly, would have cleared the sixty-two foot width of the Acadian Throughway. It is apparent, therefore, that Mr. Perkins was incorrect in his estimate of being 10 feet from the intersection when the light changed from green to the customary caution signal. Conservatively, he must have been at least 100 feet east of the intersection when such cycle occurred as he traveled 54 of the 62 foot width of Acadian Throughway before the impact. Though Mr. Perkins denied he increased the speed of his vehicle in an effort to cross the intersection before the light demanded his stopping, the physical facts would indicate he was incorrect in this statement.
Learned counsel for Defendants maintain Plaintiff was guilty of contributory negligence by his entering the intersection, though favored with a green light, without observing the presence of the oncoming Perkins vehicle entering therein. In support of such contention they rely on Dupuy v. Maury, La.App., 136 So.2d 302; Potts v. United States Fidelity & Guaranty Company, La.App., 135 So.2d 77 and Martin v. Slocum, La.App., 147 So.2d 454. All of these cases are authority for the principle of law a motorist is guilty of negligence if he proceeds into an intersection after a red light signal has changed to green favoring said motorist without allowing sufficient time for those lawfully within the intersection to clear same. Counsel for Defendants attempt to distinguish the jurisprudence enunciated in *85 Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431 in relation to the factual situation here involved, maintaining these cases are authority for a motorist approaching an intersection favored with a light proceeding through same without being required to anticipate another motorist entering the intersection from an opposing direction ignoring the admonishing red light, and such rule is inapplicable to instances as disclosed by the facts of this case where Mr. Schoonmaker was stopped at the intersection awaiting the cycle of the light from red to green. The question of conflict as to the decisions involving the rights and obligations of a motorist entering an intersection on a favorable light and colliding with another motorist’s vehicle in the intersection, who likewise had entered therein on an opposing street on a favorable light, was aptly explained in the recent case of Allen v. State Farm Mutual Automobile Insurance Co., La.App., 151 So.2d 122, (Defendant’s application to the Supreme Court for writs was refused on May 14, 1963, 244 La. 466, 152 So.2d 562) a decision of this Court wherein the majority, 151 So.2d at page 127, said:
“ * * * We believe the key to the seeming conflict in the two rules involved, namely, the right of the motorist entering on a favorable signal to proceed despite a change in signal and the right of a party faced with a go signal to proceed without looking to right or left, is that the smooth and orderly flow of traffic requires that all vehicles lawfully within an intersection when a light change occurs must be afforded an opportunity to clear and must be permitted to pass through by all opposing vehicles whether stationary or in motion, provided the driver of the crossing vehicle continues his crossing in a careful and orderly manner, with due dispatch and with careful attention to and observation of opposing traffic which may be expected to proceed upon the changing of the traffic signal.”
We are of the opinion the sole proximate cause of this accident was the negligence of Mr. Perkins entering the intersection in disobedience of the traffic signal. Accordingly, Mr. Schoonmaker, who entered the intersection fct right angle to Perkins on a favorable light, was under no obligation to anticipate such action on the part of Perkins.
The evidence reveals prior to the collision that Plaintiff, unfortunately, had a history of long and complicated illnesses. He had sustained a fractured leg and head injuries in an automobile accident while in the military service in 1942; he fractured several vertebrae when he fell from a scaffold in 1947; in September 1960 he was operated on for an inguinal hernia; in October 1960 he was operated on for stomach ulcers and the surgeon removed half of his stomach; in November of 1960 he was hospitalized with bleeding marginal ulcers and was given blood transfusions; again in November of 1960 he was admitted to the hospital for stomach bleeding and blood transfusions and following this accident in April of 1961 a laparotomy was performed from which it was disclosed there was a narrowing of the colon due to adhesions and to relieve same part of the colon was removed as well as Plaintiff’s appendix. He then was transferred to the Veterans Hospital in New Orleans where he was subsequently treated for a marginal ulcer and was again operated on to relieve the internal bleeding.
Immediately following the accident here involved Plaintiff complained of bruises to his right shin, left elbow and neck. He was seen by Dr. James F. Halley who concluded he was suffering from a cervical musculature and contusions. Dr. Moss Bannerman who had treated Plaintiff for the fracture of several vertebrae incurred some ten years prior to the ac *86 cident we are concerned with saw Plaintiff and was of the opinion the accident had aggravated the pre-existing back condition. He prescribed a Jewett brace and gave him injections to relieve pain. Though he was of the opinion the accident had, to some extent, aggravated the previous back condition of Plaintiff, he was of the opinion same had subsided some six months after the accident. Dr. C. H. Voss, a surgeon, and his son, Dr. Harold M. Voss, an internist, who had observed Plaintiff in connection with his stomach disorders and had operated on him for same, expressed the possibility Plaintiff’s continued physical disability of the stomach condition was partially attributable to this accident. However, in response to a query by counsel for Defendant as to the causal relationship of the continued disability from the stomach ailment resulting from and attributable to the accident, observed:
“A I say it could have been caused because .the man didn’t have food to eat, his wife was in desperate circumstances, the kid left school, and the worry and the tension and the emotional disturbance could have caused ulcers, in the GI tract, that’s where we — I say that, and that could be caused by the fact that he had an accident and couldn’t go back to work.”
On the question of quantum, the Trial Court was, as well as this Court is, confronted with a difficult problem in resolving the monetary award which will fairly compensate Plaintiff for the injuries he sustained in this accident. The Trial Court awarded a total sum of $6,196.32, of which amount $2,500 was for physical injury, pain and suffering; $2,065 for loss of earnings and $1,631.32 for medical expenses.
Counsel for Defendants maintain the award was excessive, especially insofar as the amount granted for loss of earnings, contending the Trial Court was in error in finding Plaintiff was incapacitated as a result of this accident for the performance of any physical work, and likewise the award in the amount of $2,500 for pain and suffering was exorbitant and should be reduced.
Counsel for Plaintiff contend the evidence reflects in consequence of the accident Plaintiff sustained an aggravation-of a pre-existing injury and his claim for pain and suffering should be increased to-$7,500 and, furthermore, the award of $2,065 for loss of wages should be increased to $9,058.73, and $713.48 additional! medical expenses should be awarded.. Counsel rely on the case of Peppers v. Toye Bros. Yellow Cab Co., La.App., 198 So. 177, for their contention the award' should be increased predicated upon the expression of the medical experts the possibility Plaintiff’s continued suffering and disability from his stomach could have been-, attributed to this accident. We particularly note in the Peppers case the Court, found plaintiff had, in fact, had a preexisting disease of colitis which was dormant in his system but within three days-after an accident this condition became-active, again manifesting itself, and in. consequence of which he suffered hemorrhages from the lower bowel. In such circumstances the Court concluded the burden rested upon defendant to show the-accident did not in fact aggravate or-cause to become active this pre-existing-dormant condition. To the contrary in. this case, Plaintiff was shown to have-suffered from stomach disorders, bleeding-ulcers, prior to the accident and, though in fact he had been given a certificate-entitling him to return to work prior to-the accident, from an examination of the-evidence we are not convinced Plaintiff’ has met the burden of proving such subsequent stomach disorders were aggravated' or might be attributable to the accident or that the accident in fact had a causal: connection with such disability.
Accordingly, we believe the award' of the Trial Court, when considered in- *87 globo, adequately compensates Plaintiff monetarily for the damages he may have suffered resulting from this accident and, for these reasons, the judgment is affirmed.
Affirmed.