AYRES, Judge.
By this action plaintiff, in his individual capacity and as administrator of the estates of his two minor sons, Kenneth W. Carroway and Darrell Glenn Carroway, seeks to recover damages sustained in and arising out of an automobile and motorcycle collision. The accident occurred when the motorcycle operated by Kenneth W. Carroway, accompanied by his brother, Darrell Glenn Carroway, riding behind him, collided with the Cadillac automobile owned and operated by Mrs. Mary J. Stuckey. In addition to Mrs. Stuckey, her insurer, Commercial Union Insurance Company, was made a defendant.
Negligence charged to Mrs. Stuckey consisted of failure to maintain a proper lookout, to keep her car under control, or to yield the right of way to the motorcycle. More specifically, she was charged with failing to see the oncoming motorcycle and in executing a left turn in its path. Denying negligence on the part of Mrs. Stuckey defendants charged Kenneth W. Carroway with negligence constituting the proximate cause of the accident, in identical particulars as directed by plaintiff to Mrs. Stuckey, with the additional specification that he was operating the motorcycle at an excessive rate of speed. As an alternative plea, plaintiff and his sons were charged in the aforesaid particulars with contributory negligence.
On conclusion of the trial, the court found plaintiff had not sustained the burden of proof imposed upon him and established negligence on the part of Mrs. Stuckey. Plaintiff’s demands were accordingly rejected and he appealed.
The accident occurred at the intersection of Lakeshore Drive and Hearne Avenue, two main thoroughfares in Shreveport, during midafternoon of March 30, 1967. Both streets are of the four-lane type, two lanes for traffic in each direction separated by a median, or neutral ground. Left-turn lanes are provided at the intersection for *118 both streets which intersect at right angles. Hearne Avenue runs in a general north and south course; Lakeshore Drive, east and west. The movement of traffic through the intersection is governed by a conventional electric-light signalling device suspended above the center of the intersection. The sequence of the signals is yellow, caution; red, “stop,” and then remaining red for a green -arrow for left turns, followed by a green, or “go,” signal. During the interval for a left turn on either of the streets, traffic on the intersecting street is faced by a red light.
Mrs. Stuckey was proceeding westerly on Lakeshore Drive; the motorcycle, easterly on the same street. In approaching the intersection, Mrs. Stuckey drove into the left-turn lane to the rear of another car. Both stopped in compliance with the red light. On a change of signals to a green arrow, the forward car, followed by Mrs. Stuckey, proceeded into the intersection. The forward vehicle completed its left turn and proceeded south on Hearne Avenue. While Mrs. Stuckey was in the act of turning, after she had reached a point slightly beyond and south of the center of the intersection, with her car headed in a southwesterly direction, her car was struck by the motorcycle on the car’s right side to the rear of the front wheel.
Mrs. Stuckey testified that before proceeding into the intersection she made observation of traffic conditions on Hearne Avenue, both north and south as well as oncoming traffic on Lakeshore Drive. Seeing no traffic approaching on Lake-shore Drive and observing a green arrow in her favor, Mrs. Stuckey proceeded with her left-turn movement, to which she then directed her attention. The motorcycle was unobserved until the moment of the collision.
Kenneth Carroway testified that when from 75 to 100 yards away he had a green light; that, on again looking as he entered the intersection, he continued to have a favorable signal; however, he never saw a left-turn signal for traffic proceeding as he was doing, but as he approached and entered the intersection Mrs. Stuckey’s car, he testified, remained stationary. He was only seven or eight feet away when, he said, Mrs. Stuckey began a left turn into his lane of travel.
The questions presented for determination are purely factual. The facts and circumstances established in the record support the conclusion that plaintiff did not bear his burden of proof and establish negligence of a causal relationship to the accident on the part of Mrs. Stuckey. We conclude, as obviously did the trial court, that Mrs. Stuckey undertook a left turn under a favorable signal, and even if, during the course of this movement, the signal changed, she should, nevertheless, have been permitted to complete it. Sibley v. Aetna Casualty and Surety Company, 163 So.2d 464 (La.App., 2d Cir. 1964— writ refused); Potts v. United States Fidelity & Guaranty Company, 135 So.2d 77 (La.App., 2d Cir. 1961); Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., 125 So.2d 613 (La.App., 4th Cir. 1961).
The testimony of young Carroway was not only vague and indefinite but, in many respects, obviously inaccurate. For instance, at his speed, estimated at between 30 and 35 m. p. h., Mrs. Stuckey could not have been only seven or eight feet distant from him when she began a left turn. From a stopped position behind another car, she not only covered the distance occupied by the forward car but a distance of at least 36 feet, the width of the two northbound traffic lanes and the median on Hearne Avenue. Moreover, had he observed Mrs. Stuckey’s car, he would have seen her stopped in the left-turn lane. From this fact, he would have, or should have, known that she would undertake a left-turn movement on the proper signal. As he approached the intersection he had a red light, as did Mrs. Stuckey, and not a green light as he testified.
The conclusion is inescapable that Carro-way was either not maintaining a proper *119 lookout or observing the traffic light, or else he heedlessly proceeded into the intersection irrespective of an unfavorable signal.
We find no error in the judgment appealed. It is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.