McCALEB, Justice.
Shortly past midnight on October 20, 1955, plaintiff, a Negro woman, received severe and painful personal injuries when struck by an automobile driven by Douglas W. Robison on Linwood Avenue in the city of Shreveport while she was waiting to board a northbound trolley. Plaintiff was standing on the trolley platform, or “safety zone” on the east side of Linwood Avenue, 79 feet north of the north curbline of Claiborne Avenue at its intersection with Linwood. Just prior to striking and running *341 down plaintiff, Robison had been driving his car northward on Linwood Avenue toward Claiborne Avenue, which crosses it at right angles, at a speed of from 50 to 55 miles per hour by his own admission.[1] As he approached the semaphore light controlling traffic at the intersection, Robison was faced with an unfavorable light but, notwithstanding this, he heedlessly drove on with speed unabated and ran the red light at a time when Dr. Carroll V. Guice, who was driving east on Claiborne Avenue at an admittedly lawful speed of approximately 30 miles per hour, had entered the intersection on the favored green traffic light. As a result, the Robison car was struck on its left rear by the front end of the Guice automobile, the former continuing forward over the intersection out of control until it struck plaintiff and knocked her against a concrete pole.
This suit for $110,992.10 damages was thereafter brought by plaintiff for a solidary judgment against Robison and his liability insurer, Fidelity Mutual Insurance Company, whose liability was limited to $5,000, and Dr. Guice and his liability insurer, Allstate Insurance Company, whose liability was limited to $10,000, the petition charging that plaintiff’s injuries were attributable to the joint and concurrent negligence of the drivers of the colliding vehicles in failing to maintain a proper lookout, driving at excessive speed, and generally failing to keep their vehicles under proper control.
The case was tried before a jury, which rendered a verdict in favor of plaintiff and against defendants in solido for $25,000 but the liability of the insurance carriers was restricted to the limit of each policy. During the trial Robison readily conceded his gross negligence in all particulars. However, it having been established that he was personally unable to satisfy any judgment which might be rendered against him and the liability of his insurer being limited to $5,000, industrious counsel of plaintiff directed their main attack on Dr. Guice in an effort to show that he was guilty of some dereliction of duty which was a contributing factor to the collision between his car and the Robison car and were able to convince the jury that such was the case despite the fact that he was traversing the intersection on a favorable light and at a reasonable rate of speed.
Following the verdict Dr. Guice and his insurer moved for a new trial but the district judge overruled the motion and entered judgment in accordance with the verdict. They then appealed to the Court of Appeal, Second Circuit, where, with one judge dissenting, the judgment of the district court was affirmed. See Youngblood v. Allstate Insurance Company, La.App., 98 So.2d 570. *343 We granted certiorari and the case has been argued and submitted for our decision.
The majority opinion of the Court of Appeal that Dr. Guice was' guilty of negligence which was a contributing cause of the accident, is based entirely upon the doctor’s own account of the operation of his car when he was approaching and entering the intersection and his actions from the moment he became aware that Robison was running the red semaphore light at a high rate of speed. After quoting extensively from Dr. Guice’s testimony, the Court deduces that he was at fault because he focused his attention on the green semaphore light in front of him (although he says that the entire intersection was within the cone of his vision) and, admittedly, did not look to the left and right for traffic approaching on Linwood Avenue before proceeding over the crossing. To support its conclusion that Dr. Guice should have turned his head to the right to ascertain whether traffic on Linwood was obeying the law, the opinion cited several Court of Appeal cases to the effect that a motorist may not blindly proceed into obvious danger “which even one exercising slight care would have noticed and avoided.” New Hampshire Fire Ins. Co. v. Bush, La.App., 68 So.2d 254, 256.
We have no quarrel with the law cited by the Court of Appeal but we fail to perceive its applicability to the facts upon which its conclusion is based. The substance of Dr. Guice’s testimony is that, accompanied by a Miss Maxwell and a Mr. Davenport, he was driving his car on Claiborne Avenue at a speed of 30 to 35 miles per hour. When he was about a block away from the intersection of Linwood Avenue he noticed that the traffic light was red so he took his foot off the accelerator and slowed down. Upon reaching a point about 30 feet or more from the intersection the light facing him changed to green so he accelerated his speed and proceeded toward the intersection. At that time he was looking at the entire crossing and, because he had the right of way, he assumed that anyone travelling on Linwood Avenue would stop.[2] Nevertheless, just as he neared the entrance of the intersection, the lights of the approaching Robison car came into his line of vision and he immediately “hit the brake”. From the time the brake of the Guice car took hold until it reached the point of impact with the Robison car, which was four feet east and one foot south of the center of the intersection, the Guice car skidded 28 feet.
There is nothing contained in the testimony of Dr. Guice which warrants a holding that he failed to exercise ordinary prudence in his approach to and negotiation of the crossing. He was driving at a reasonable rate of speed and maintaining a general *345 observation of the intersection. Thus, he had his car under such control as to meet and respond to any hazard which might be expected under normal conditions and this was all that the law required of him. He was not obliged, as the Court of Appeal indicates, to turn his head in the direction of traffic approaching from his left or right, or from both left and right, to ascertain whether someone might violate the law by running the crossing on a red light. On the contrary, he had the right, under our jurisprudence, to assume that the law would be respected.
In Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, where a stop sign was involved, the Court said:
“ * * * The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law.”
This rule has been cited and followed on several occasions, notably in Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222 and Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339.
The above cited jurisprudence governing cases where stop signs were involved applies, a fortiori, to intersections controlled by electric semaphore lights. When an intersection is controlled by a stop sign, the motorist on the favored street, as stated in the Koob case, is entitled to indulge in the assumption that any driver approaching from the less favored street will bring his car to a complete stop before entering the intersection. Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.
In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, a case very simi *347 lar to this one, the Court refused to hold a truck driver proceeding on a green light guilty of negligence for failing to observe that plaintiff’s husband was not going to stop in obedience to a red signal light, which was not working at the time. In support of the ruling the opinion cited Manuel v. Bradford, La.App., 166 So. 657; Clark v. DeBeer, La.App., 188 So. 517; Seiner v. Toye Brothers Yellow Cab Company, La.App., 18 So.2d 189 and Fitzpatrick v. New Orleans Public Service, La.App., 22 So.2d 473, and concluded by adopting with approval the following observations:
“ ‘We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident wo'uld not have occurred.’ ”
If the Court of Appeal had followed the above stated rule no difficulty would have been encountered by it in concluding that the unfortunate accident befalling plaintiff was attributable solely to Robison’s utter disregard for the law and of the safety and rights of others. Indeed, in evaluating Dr. Guice’s testimony and drawing therefrom the deduction that he could or should have seen the Robison car before it sped through a red light and at a time when Dr. Guice would have been able to avoid colliding with it, the majority of the Court was, perforce, required to rest their finding on premises of a speculative nature instead of on proven facts. If the case had to turn on mathematical estimates of distances and speeds and time allotted for human reactions, we think that the views expounded in the dissenting opinion demonstrate that the majority conclusion is manifestly erroneous. But, as indicated above, this is not essential under the salient facts of this case. Suffice it to conclude that Dr. Guice was not at fault in attempting to traverse the intersection on a favorable signal light at a reasonable speed and that he, as a prudent man, had no reason to believe or anticipate that Robison would cannonball through the crossing in defiance of law.
The judgment of the district court holding Dr. Carroll V. Guice and Allstate Insurance Company liable in solido with the other defendants for damages, which was. *349 affirmed by the Court of Appeal, is reversed and it is now ordered that plaintiff’s suit against these defendants be dismissed at her costs.
HAMITER, J., dissents with written reason.
HAWTHORNE, J., dissents.

. A disinterested witness estimated the speed of the Robison car to be 70 miles per hour on its approach to the Claiborne Avenue intersection.

. Linwood is a four lane two-way paved thoroughfare, 40 Feet in width; Claiborne is a 30-foot two-way asphalt street.