GLADNEY, Judge.
Plaintiff’s action is for the recovery of property damages sustained by his Chevrolet Corvette automobile which was involved iir an intersectional collision on December 6, 1958, in Shreveport, Louisiana. From a judgment casting James C. Weir and Henry Strogens as joint tort-feasors, Weir has appealed.
The question presented on this appeal is whether, under the circumstances of the instant case, a motorist proceeding into an intersection on a favorable light was negligent by reason of his non-observance of a motor vehicle proceeding into the intersection from a side street on an unfavorable light.
On the aforementioned date, Weir, a lieutenant in the United States Air Force, borrowed the Corvette from plaintiff, a car dealer, for the purpose of a demonstration. He drove the automobile south along Line Avenue until he reached the intersection of Line and Howell Street. There he stopped in obedience to a red light and when the light began to change to green in his favor, he shifted gears and moved forward into the intersection where a collision occurred with a Pontiac automobile operated by Henry Strogens.
*795 Appellant testified that prior to shifting the stick gear lever of the Corvette from neutral to first, he looked from left to right and noticed a car approaching from the left, but thought its driver (later identified as Henry Strogens) had sufficient time to stop; that he next checked the transmission while shifting and proceeded forward with his gaze fixed ahead of the automobile; and that after traveling a short distance he again noticed the approach of the Strogens vehicle which was then so close his only alternative was to turn violently to the right in order to avoid the accident. He further explained:
“After the initial glance and after the initial summation I made about his speed, distance and time required to stop for the light, my glance, my entire vision was occupied by the instruments on the cockpit or in the cockpit of the Corvette automobile. I looked left and -right, horizontally, after shifting into first gear. And with my initial entrance into the intersection, it was at this time that I noticed the mass or the automobile, as it turned out to be, approaching from my left.”
The evidence conclusively establishes the negligence of Henry Strogens in that he entered the intersection upon a red light and it is also firmly established that the light was favorable to Lieutenant Weir when he entered the intersection. In his ■reasons for judgment, the trial judge remarked :
“I think the lieutenant’s testimony, although it renders what he did — it is an adequate explanation of what he did, it does not render him free from neglect. Since he was driving a car that he wasn’t familiar with, he was burdened with a good bit more than usual on him to take the precautions that most people have to take when they enter an intersection.”
The testimony of Weir is largely substantiated by the testimony of L. O. Thibodeaux, a motorist who was also driving south along Line Avenue and who approached the intersection at the same time as did the appellant. Thibodeaux, a disinterested witness, testified that he brought his vehicle to a stop along the right side of the Corvette, and awaited a change of the light. He said that both vehicles were stopped a short distance from the intersection; that the Corvette started forward before the traffic signal had completely changed from amber to green, but that the light had changed to green in favor of Wei.r as he entered the intersection; and that he observed that the Pontiac was in the act of running a red light so he brought his vehicle to a stop. This witness further testified that at the time Weir was proceeding into the intersection the car being driven by Strogens was about 100 feet from the light pole at the intersection. Mr. Thibodeaux testified that he had driven some 25 or 30 feet before he .realized that the Pontiac would not stop.
Reverting to the question of the negligence of appellant, certain recent decisions of the Supreme Court of this state have given particular attention to the degree of care required of the motorist on the favored street with respect to his observance of unwarranted invasions of the intersection by side-street traffic. Important for our consideration are: Henderson v. Central Mutual Insurance Company et al., 1959, 238 La. 250, 115 So.2d 339; Bryant v. Ouachita Coca-Cola Bottling Company, Inc. et al., 1960, 239 La. 83, 117 So.2d 919; and Youngblood v. Robison et al., 1960, 239 La. 338, 118 So.2d 431.
Chief Justice Fournet in Henderson v. Central Mutual Insurance Company et al. absolved from blame a motorist proceeding on the favored street, and referred to a pronouncement in the case of Koob v. Cooperative Cab Company et al., 1948, 213 La. 903, 35 So.2d 849, that the danger of such an intersection is less where traffic is warned to stop by stop signs, than at a corner where no stop signs have been erected, and that a motorist enjoying the *796 right-of-way has a right to assume that any driver approaching the intersection from the less favored street will observe the law, and that such motorist can indulge in this assumption until he sees or should see that the other car has not observed and is not going to observe the law. The Henderson case involved a driver, Mrs. Harmon, who was traveling on a thoroughfare in Shreveport protected by stop signs from traffic approaching from side streets. The court, in light of the facts presented, then made this observation:
“Even assuming, however, that the view into Fairfax Street is unobstructed for a considerable distance, as found by the Court of Appeal, and charging Mrs. Harmon with having seen what she should have seen, we think that under the test established in the Koob case, supra, she was free from negligence as it was impossible for her to anticipate Neal Palmer’s failure to abide by the stop sign, since according to Neal’s testimony, in which he is corroborated by his sister, who was accompanying him at the time of the accident, he had slowed down to about 15 miles per hour when approaching the stop sign, from which fact Mrs. Harmon — had she observed him — could have reasonably concluded that he intended to bring his car to a timely stop.” 115 So.2d at page 342.
Shortly thereafter the same court directed its attention to Bryant v. Ouachita Coca-Cola Bottling Company, Inc. et al., in which Justice Hamlin, the organ of the court, quoted the following language from Kientz v. Dennery, 209 La. 144, 24 So.2d 292, 295:
“We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist, is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others * * 117 So.2d at page 921.
Justice Hamlin also emphasized the principle that acts of negligence sufficient to warrant liability on the part of the motorist on the favored street must be most substantial and must have been such a direct factor that without them the accident would not have occurred. The facts in the case then under review clearly indicated that Adams, the operator of the truck of the Ouachita Coca-Cola Bottling Company, Inc., did not observe the approach of the errant motorist because he was concentrating his attention upon the electric semaphore light. Accepting this factual conclusion, the Court held Adams was not at fault, stating:
“It is our view that Adams was strictly adhering to the traffic rules and regulations, operating his truck at a lawful speed in the belief that the law would also be obeyed by others. The acts of negligence attributed to him while operating his truck in obedience to positive law do not convince us that they were most substantial, and that they were such direct factors that without them the accident or intersectional collision would not have occurred, in view of the circumstances then existing.” 117 So.2d at page 922.
In Youngblood v. Robison et al., Justice McCaleb drew the following distinction between the exercise of observation required of the motorist on the favored street as to a vehicle approaching from and warned by a stop sign on the less favored street and the exercise of such observation by a driver favored with the electrical semaphore light:
“When an intersection is controlled by a stop sign, the motorist on the favored street, as stated in the Koob case, is entitled to indulge in the as *797 sumption that any driver approaching from the less favored street will bring his car to a complete stop before entering the intersection. Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
“This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.”
In exonerating the appellant, the Court remarked:
“Suffice it to conclude that Dr. Guice was not at fault in attempting to traverse the intersection on a favorable signal light at a reasonable speed and that he, as a prudent man, had no reason to believe or anticipate that Robison would cannonball through the crossing in defiance of law.” 118 So.2d at pages 434-435.
The rationale of these cited cases is to the effect that a motorist is entitled to the protection of the law when he proceeds into an intersection upon a favorable electric semaphore signal light, and upon so doing, he may indulge in the assumption that drivers approaching from cross streets will observe the law and bring their vehicles to a complete stop. It is only when the favored motorist .realizes that a driver approaching the intersection will not so observe the law and it is possible for him to take appropriate measures of avoidance, that the law will not afford to him its cloak of protection.
It, therefore, is our finding that Lieutenant Weir was not at fault in attempting to traverse the intersection on a favorable signal light at a time when he had every reason to expect, as a prudent man, that Strogens would obey the law and bring his vehicle to a stop. Thus, having observed that Strogens was approaching the intersection at a sufficient distance within which to bring his vehicle to a stop in obedience to the traffic signal, Weir should not be held to be at fault for directing his attention elsewhere.
The judgment as it relates to appellant, James C. Weir, is reversed and plaintiff’s demands are rejected at his cost.