192 So.2d 172 (1966)
Marie LaHITTE, Wife of and Leonard J. LaHitte
v.
ACME REFRIGERATION SUPPLIES, INC., and American Employers' Insurance Company.
No. 2346.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1966.
Rehearing Denied December 5, 1966.
Writ Refused February 3, 1967.
*173 Frank S. Bruno, New Orleans, for plaintiffs-appellants.
Drury & Lozes, Felicien P. Lozes, New Orleans, for defendants-appellees.
Before McBRIDE, REGAN, and BARNETTE, JJ.
BARNETTE, Judge.
The plaintiff Mrs. Marie LaHitte seeks damages for personal injuries, and her husband and coplaintiff, Leonard J. LaHitte, seeks special damages for hospital and medical expenses incurred by him as a result of his wife's injuries. These claims arise out of an automobile accident involving an automobile driven by their teenage son, Leonard J. LaHitte, Jr., in which Mrs. LaHitte was a passenger, and an automobile owned by defendant Acme Refrigeration Supplies, Inc., and insured by American Employers' Insurance Company, both of which were made defendants herein.
The defendants denied negligence on the part of their driver, David D. Dawson, and *174 assumed the position of plaintiffs in reconvention seeking recovery of $100 for Acme, the deductible amount paid by the insured, and $886.28 for American Employers' Insurance Company, the amount paid by it for repair of the damage to the Acme automobile. Their demand in reconvention is based on the alleged negligence of plaintiffs' driver, which they assert was the sole proximate cause of the accident.
The case was tried before a jury which rendered a verdict for defendants rejecting the demands of the plaintiffs and dismissing their suit. The verdict made no mention of the reconventional demand. The trial judge took cognizance of this omission by the jury and ruled from the bench: "And I also want you to know that the jury, having failed to give a verdict in favor of the plaintiff in reconvention, the judgment will dismiss the suit in reconvention." Judgment accordingly was signed and filed, and plaintiffs appealed. The defendants answered the appeal in this court praying for judgment in reconvention in the amounts of $100 and $886.28 respectively, as prayed for below.
The accident giving rise to this litigation occurred on the afternoon of March 31, 1964, at the intersection of Veterans Memorial Highway and Causeway Boulevard in Jefferson Parish. This intersection is controlled by eight pairs of semaphore traffic lights. Veterans Highway, running east and west, is a very wide thoroughfare consisting of two lanes for through traffic moving in each direction separated by a canal. Causeway Boulevard is a much-traveled, divided highway connecting the Lake Pontchartrain Causeway on the north with Airline Highway on the south. There are two lanes for through traffic on each side of the median. The median at this point is wide enough to provide a safe stopping place for cars traveling through the intersection in either direction on Veterans Highway which are caught by the changing lights before completing the crossing of Causeway Boulevard. Likewise, the bridges on Causeway Boulevard across the canal provide similar safety zones for traffic crossing Veterans Highway.
A copy of the design and engineering specifications of the traffic control system for this intersection is in evidence and shows two separate traffic lights for each lane of traffic, or a total of 16 lights. These lights are suspended from cables directly above each lane and are located on the far side of each of the double traffic lanes of the intersecting thoroughfare. For traffic moving in any direction in any lane, there is a light at the far side of the double lane first approached; and, after traversing the neutral zone, there is another light at the far side of the double lane next to be crossed before clearing the intersection.
Defendants' driver traveling from north to south was stopped on the bridge in obedience to the traffic light before crossing the east-bound double lane of Veterans Highway. In the lane to his right another automobile driven by a witness, the Reverend Ralph Hays, was likewise at a standstill awaiting the light change. Plaintiffs' Cadillac, driven by Leonard J. LaHitte, Jr., was proceeding east on Veterans Highway approaching the intersection in the through lane farthest from the canal. Other cars were proceeding in the same direction in the lane next to the canal.
Before the LaHitte car reached the intersection of Causeway Boulevard (the exact distance is in dispute), the light controlling its movement changed from green to amber. The cars in the lane nearest the canal came to a stop before entering the intersection. Young LaHitte did not stop but proceeded into the intersection. He testified that he was afraid of being struck from the rear if he stopped too quickly and intended to stop in the neutral zone after crossing the south-bound lanes of Causeway Boulevard.
When the lights controlling traffic on Causeway Boulevard changed from red to green, both the Hays car and the defendants' car started across the east-bound *175 lanes of Veterans Highway. Mr. Hays observed that the cars in the lane nearer the canal were stopping in obedience to the light signal. He then started to cross, but, after traversing the near lane, he observed the LaHitte car crossing his path in the outer lane. He stopped suddenly, and the LaHitte car passed in front of him, missing his car by about a foot. David Dawson, defendants' driver, having started across as soon as his light changed to green, did not see the LaHitte car and collided with it. The front of defendants' car struck the left front side of the LaHitte car. Both cars were badly damaged, and Mrs. LaHitte sustained rather serious injuries.
There is no question of the negligence of Leonard LaHitte, Jr., as we will discuss more fully below. His negligence is imputed to his father, who is a coplaintiff for special damages, and thus his recovery is clearly barred regardless of any negligence on the part of defendants' driver. The son's negligence is not imputable to his mother, a plaintiff in her own right for damage for personal injury. This was squarely held by the Supreme Court in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), in a strikingly parallel situation. Therefore, if defendants' driver was guilty of any negligence, which was a proximate cause of the accident, Mrs. LaHitte would be entitled to recover from the defendants and would not be barred by a defense of imputed contributory negligence. The judgment appealed from rejects the demands of Mrs. LaHitte and also rejects the demands of the defendants, plaintiffs in reconvention. Assuming the negligence of Leonard J. LaHitte, Jr., if the plaintiffs in reconvention are not entitled to recovery, it can only be because the negligence of Acme's driver was a proximate cause of the accident. Hence, the judgment is inconsistent and cannot be sustained in both respects.
General verdicts of juries do not recite the reasons upon which the verdict is based, nor is there any explanation in this case for the failure to enter a verdict on the reconventional demand. The court might have refused to accept a partial verdict and instructed the jury to continue its deliberations until a verdict was reached on the reconventional demand. But apparently the trial judge applied the same rationale to the verdict as is applied to a judgment which omits to decide all the issues tried and submitted. In that situation, the silence is construed to be a rejection of the demands upon which the judgment is silent.[1] At any rate, the court did enter judgment dismissing the suit in reconvention.
Young LaHitte by his own admission was driving 35 or 40 miles per hour as he approached Causeway Boulevard. This is within the lawful limit at that point. He admitted that the light controlling traffic in his lane had changed from green to amber before he reached the intersection. His distance from the nearest point of intersection when the light changed is an important one.
He testified on direct examination:
"A As I approached the light hadwas greenas I was approximately a car length away from it, it started to change into yellow and when it changed to yellow I couldn't stop the car because I had a person in back of me and a person to the right-hand side, and I slammed on my brake and thought I would have an accident in the back of me, and it would have been unavoidable for them to miss me in the back of me, and the light turned as I went under it and the next thing I knew I was hit. I did not see the car.
* * * * * *
"A Well, when I was coming to the light I knew that I couldn't stop, so *176 I intended to make it to the island in the middle, the safety zone, and I applied the brake as I went a little bit under the light to get into the safety zone and that's when I was hit."
On cross-examination he testified:
"Q Didn't you testify previously when you were a car length away from the light the intersection light had turned yellow?
"A I said it was in the process of turning yellow."
At other times he testified that he was one and one-half-car lengths from the intersection when the light changed to amber. He was rather positive that he did not apply his brakes until the car was in the intersection, near or under the light. He denied there was any mechanical defect in his brakes.
Anthony J. Bua, the deputy sheriff who was called to the accident scene, said LaHitte told him he was about 300 feet from the light when it began to change and that his brakes failed. He found no skid marks made by either car. He testified that he tried the brake pedal and that it did go to the floor. This, of course, was after the left front of the car was seriously damaged, including the wheel, and we think this could account for the faulty condition of the brakes when the officer made his examination. The witness was emphatic that LaHitte said his brakes failed.
Officer Gemmalva who assisted Officer Bua in the investigation testified positively that he heard LaHitte make these statements to Officer Bua concerning distance and brakes. Mr. Hays also testified to having heard Leonard LaHitte, Jr., say that his brakes failed. The statement about brake failure is further corroborated by David Lovich, a passenger in defendants' car, and by H. A. Dawson, father of David Dawson. Mr. Dawson was notified of the accident and hurried to the scene. He inquired of LaHitte, "What happened, son?" LaHitte answered, "I don't know; my brakes failed."
In contradiction of this testimony about brakes, Mr. LaHitte, Sr., testified that he had driven the car before and after the accident, that the brakes had never failed, and that it had never been necessary to repair them. The condition of the brakes after the accident damage had been repaired is not persuasive, for it must be assumed that the repairman would not deliver the car with defective brakes.
Mrs. LaHitte testified that her automobile was about the length of an automobile from the intersection when the light changed from green to amber. But Mrs. Betty Green, a friend of Mrs. LaHitte, who was riding on the front seat with Leonard, testified:
"A We were just driving down Veterans Highway at the normal speed, and maybe a little less than that, and I think the speed rate was 40, approximately about 35 or 40, and I was looking ahead and wasn't paying too much attention to anything, just more or less enjoying the ride, and I saw the light turn yellow.
* * * * * *
"Q Well, how about saying it in car lengths?
"A A few car lengths, a few, and the light turned amber and we kept on going and I just assumed that Mr. LaHitte would stop and he didn't and I said we are not going to make it, and by that time there was the other light had turned red and we were hit just about that time.
"Q Now, when you saw this other light turn to red where were you?
"A We were in the intersection.

*177 "Q And was that the time that you were hit?
"A Yes. It happened just about that sameI saw the light turn red and then we were hit. Wasn't very much time between.
"Q Now, when you entered the intersection what was the condition of the light?
"A It was amber when we entered.
"Q You are certain of that?
"A Positive.
* * * * * *
"A I was aware of the light turning red and just about that time we were hit."
It was stipulated that the timing of the traffic light was set to show caution (amber) six seconds. If the LaHitte car was traveling 35 or 40 miles per hour, as testified, it was covering approximately 50 to 58 feet per second. In six seconds it would travel between 300 and 350 feet. If plaintiffs' driver saw the light change from green to caution as he testified he was then at least 250 feet from the beginning of the intersection. Certainly this was ample distance and time in which to stop safely. 9C Blashfield-Cyclopedia of Automobile Law and Practice § 6237 (1954). Either he violated the traffic signal willfully by not attempting to stop, or his brakes failed and he was unable to stop.
Whatever the explanation, it is clear that he did not stop; and, by his own statement, he did not apply his brakes (whether faulty or not) until almost the moment of impact when he was already well into the intersection. He had ample time and distance in which to stop before reaching the intersection, and it was negligence not to do so.
We must now consider the manner in which defendants' car entered the intersection to determine if there was negligence on the part of their driver.
David Dawson, driving the defendant Acme's automobile, was at a standstill on the bridge alongside and to the left of the car driven by Mr. Hays. Mr. Hays testified, and it is not disputed, that cars approaching from his immediate right in the lane nearest the canal came to a stop at the intersection in obedience to the traffic signal. This cleared the first lane immediately in front of him and Dawson. Mr. Hays did not see the LaHitte car in the second lane until after he had moved across the first lane almost into the path of the on-coming Cadillac. He stopped instantly and the Cadillac barely missed his car as it passed in front. Mr. Dawson had taken off with the green light simultaneously with the Hays car crossed the first lane, as did Mr. Hays, but, unlike Mr. Hays, did not stop. He thus proceeded into the second lane at the same moment the Cadillac reached that point. Dawson said he did not see the Cadillac until Mr. Hays' car suddenly stopped. That was almost the moment of impact.
Counsel for plaintiffs makes much of the point that Dawson did not see the on-coming Cadillac, which he argues he could have seen if he had entered the intersection cautiously. Dawson, on cross-examination, said that he wasn't looking for the LaHitte car, that he was looking at the light and pulled out as soon as it changed. From this statement counsel argues that Dawson did not determine that the intersection was cleared before entering and that this constituted negligence. Several cases are cited in support of this point. We find no fault with the authorities cited, but they simply do not apply to the factual situation before us.
David Lovich, a passenger in the Dawson car, corroborated the testimony of Mr. Hays and David Dawson. There is no inference which can be drawn from either of these witnesses that the Dawson car took off with greater speed or less caution *178 than did Mr. Hays. The fact that Mr. Hays did not see the Cadillac before it entered the intersection in front of him is probably explained by the fact that other cars were stopped in obedience to the light in the lane nearest him, which conceivably could obstruct his view. The occupants of the Dawson car had the additional obstruction of the Hays car on their immediate right. The fact that Mr. Hays was able to stop and Dawson was not is explained by the favored position Hays had when the Cadillac first emerged from behind the cars stopped in the first lane. Under these circumstances Mr. Dawson was not negligent in proceeding into the intersection in obedience to the traffic signal in the manner in which he did. Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 2 A.L.R.3d 1 (1960); Bryant v. Ouachita Coca-Cola Bottling Co., 239 La. 83, 117 So.2d 919 (1960); Hunt v. West, 187 So.2d 769 (La.App.1st Cir.1966); Le Beau v. Baton Rouge Bus Co., 136 So.2d 740 (La.App.1st Cir.1961.)
We therefore hold that the defendants' driver, David Dawson, was free of negligence and that the sole proximate cause of the accident was the negligence of Leonard J. LaHitte, Jr., plaintiffs' driver.
For these reasons the judgment rejecting defendants' demands in reconvention is in error and must be reversed, and judgment will be rendered granting them damages against the plaintiff Leonard J. LaHitte, the father of the minor Leonard J. LaHitte, Jr. The amount of damages was proved by submitting an itemized statement of what it would cost to repair the Acme car. This amount, $986.28, was not disputed. Defendant Acme is entitled to $100 of the total as reimbursement for the loss it suffered under the deductible clause of its policy. The defendant insurer is entitled to the remainder.
Plaintiffs complain of the refusal of the trial judge to give certain special charges and of certain allegedly erroneous charges which were given to the jury. Without discussing the merit of plaintiffs' contention, we must observe that had the jury found as a fact that plaintiffs' driver was not negligent, whether such finding was based on proper or erroneous charges, we, as judges of the fact as well as the law, would have been compelled to hold that manifest error had been committed.
Because of its failure to pass on the reconventional demand, it is impossible to determine with any degree of certainty just what the jury did find on the issue of Dawson's negligence. Any finding other than the conclusion we have reached, that Dawson was free of negligence, would likewise be manifestly erroneous and reversible under the facts presented by the record before us. So again, it would not have changed our final conclusion that the jury was correctly or incorrectly charged. We find it unnecessary, therefore, to dwell further on this issue. See Barreca v. United States Fire Ins. Co., 182 So.2d 138 (La.App. 4th Cir. 1966).
For the foregoing reasons, the judgment appealed from is affirmed insofar as it dismisses the suit of plaintiffs Marie LaHitte and Leonard J. LaHitte. The judgment is reversed insofar as it dismisses the reconventional demand, and judgment is now rendered in favor of Acme Refrigeration Supplies, Inc., against Leonard J. LaHitte in the amount of $100 together with legal interest from date of judicial demand until paid, and in favor of American Employers' Insurance Company against Leonard J. LaHitte in the amount of $886.28 together with legal interest from date of judicial demand until paid.
Plaintiffs are to pay all costs of these proceedings.
Affirmed in part; reversed in part; judgment rendered.
NOTES
[1] For a fuller discussion of this point see Mexic Bros., Inc. v. Sauviac, La.App., 191 So.2d 873, this day decided.