LOTTINGER, Judge.
This is an automobile accident case. These two cases were consolidated for trial, but the case of Daniel Covington v. Easton Broussard and John Guidry was compromised and settled after the Trial Court rendered its judgment, therefore, this opinion is limited to the case of John Guidry v. Eldon Covington.
The accident in question occurred on July 26, 1965, at approximately 8:00 p. m. at the intersection of U.S. 190 at the extension of Church Street, approximately one mile west of the city limits of the City of Hammond, Louisiana. At the scene of the accident, U.S. 190 and Church Street meet so as to form a straight line in a generally easterly and westerly direction. At the point of the intersection, U.S. 190 curves to the right or southerly at approximately a forty-five degree angle, so that an automobile traveling easterly on U.S. 190, or toward Hammond, would curve to the right to continue on U.S. 190 rather than going straight on Church Street.
For traffic traveling west on Church Street, there is a stop sign and an overhead red flashing light at the intersection. For westbound traffic using U.S. 190, there are two signs, one stating “YIELD AHEAD”, and the other stating “YIELD”, and near these signs there is a pedestal mounted yellow signal light.
*313 For eastbound traffic, which would be on U.S. 190 going toward Hammond, there is a yellow, or amber, flashing light, suspended from a span of wire which hangs completely across the highway, and about twenty to twenty-five feet above the ground. This signal light flashes in a westerly direction down U.S. 190, but from all indications, it is situated over the center line of U.S. 190 as this center line would continue in its curve, rather than over the center line continuing onto Church Street.
Immediately prior to the accident, Eas-ton Broussard was traveling east on U.S. 190 at approximately forty to forty-five miles per hour. Broussard was operating a tractor-trailer type truck which was owned by John Guidry. At a point approximately two city blocks prior to or west of the intersection, Broussard activated his left turn signal and commenced slowing down. Mr. Benton Box, the operator of the automobile behind the truck, testified that he saw the rear left turn indicator working, and that the truck slowed down. Broussard testified that he slowed to approximately fifteen miles per hour at the intersection. The left turn signal by the truck indicated that the truck intended to continue straight onto Church Street by crossing the westbound lane of U.S. 190.
Eldon Covington was proceeding westerly on U.S. 190. With Eldon Covington was his brother, Daniel Covington, who was riding in the front passenger seat. Eldon Covington indicated that he was familiar with this intersection and knew that there was a “YIELD” sign, but stated that he did not see it, nor did he slow down when he approached the intersection. The accident occurred when Eldon Covington drove his automobile through the “YIELD” sign without stopping and struck the right side of the truck driven by Broussard.
John Guidry, the owner of the truck, filed suit for $1,453.34, consisting of $753.-34 damages to his truck and $700.00 in damages for loss of use of the truck. The defendant Eldon Covington reconvened for pain and suffering, personal injuries, and for. property damage. The Trial Court found in favor of the defendant, Eldon Covington, on the main demand, and in favor of the plaintiff and defendant in re-convention, John Guidry, on the reconven-tional demand. From this judgment the plaintiff, John Guidry, has appealed. The defendant, Eldon Covington, has not answered the appeal.
As above stated, there was a flashing yellow or amber light facing in a westerly direction so as to be visible to eastbound traffic on U.S. 190. The law relative to flashing yellow or amber signals is found in LSA-R.S. 32:234, which provides:
“A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
******
“(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL) — When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.”
Since the Trial Court has not favored us. with written reasons for judgment, we do not know what determination was made by the Trial Court as to the location of this particular flashing yellow light, and as to what lane of traffic it was intended to control. For the sake of argument, we must consider that the light was intended for all traffic approaching from the west on U.S. 190, and in particular for the vehicles which intended to cross over from U.S. 190 to the extension of Church Street. Easton Broussard, the driver of the truck, activated his left turn signal light when he was two blocks ahead of the intersection, and he commenced slowing down his vehicle so that he was traveling at approximately fifteen miles per hour at the point of the intersection. He therefore approached this flashing caution signal with caution.
*314 For traffic coming from the east on U. S. 190, there were two signs indicating “YIELD”. The statutory law as regarding the yield signs is found in LSA-R.S. 32:123, as follows:
“A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
******
“C. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the cross walk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right of way to any pedestrian legally crossing the roadway on which he is driving, and to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard.”
Eldon Covington testified that he knew of the presence of the yield signs, but did not stop. He continued through the signs at approximately thirty-five to forty miles per hour until it was too late to stop. He further testified that he had seen the truck some time before the accident and could have applied his brakes had he desired to do so. He never did apply his brakes. Easton Broussard testified that he also knew of the yield signs and knew that he should have been on the favored street.
We are of the opinion that under the facts as presented, Easton Broussard was never confronted with such circumstances so as to indicate to him that Covington was not going to stop at the yield sign. We are further of the opinion that because .there are more stringent regulations applicable to a yield sign than to a flashing caution light, Easton Broussard must be declared to have been on the favored street.
As was stated in McCaa v. Hertz Corporation, La.App., 178 So.2d 772, 773, 2d Cir. 1965:
“The settled jurisprudence of this state is to the effect that a motorist, driving at a reasonable rate of speed on a right of way street, has a right to assume that a driver approaching the intersection from a less favored street, governed by a stop sign, will yield the right of way by bringing his car to a complete stop before entering the intersection. He may indulge in this assumption until he sees, or should see, that the other driver has not observed, or is not going to observe, the law. See Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 (1959) and Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 2 A.L.R.3d 1 (1960).”
And in Guidry v. Grain Dealer Mutual Insurance Company, La.App., 193 So.2d 873, 877, 3rd Cir. 1967, the above rule was made applicable to yield signs when the Court held:
“Our jurisprudence is established that the motorist on a right of way street, with knowledge of the location of a stop or yield sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849 (1948); Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964); Fontenot v. Liberty Mutual Insurance Co., 130 So.2d462 (3rd Cir. 1961).”
Covington stated that he saw the truck some time prior to the accident and therefore we are of the opinion he should have stopped at the yield sign and yielded the right of way to the truck owned by Guid-ry. We therefore feel that the sole proxi *315 mate cause of this accident was the failure of Covington to yield the right of way. The Trial Court will therefore be reversed.
As to the damages sought by the plaintiff, Guidry, there seems to be no question but that the damages to his truck amounted to $753.34. There is in the record of this proceeding the bill which he paid for the repairs to his truck. John Guidry further asked for damages for loss of use of his truck. His truck was out of service for ten working days. He testified that he was paid $100.00 per load for each load of produce his truck carried to Hammond. He could carry one load per day, and during the ten days his truck was out, another trucker had made the trips to Hammond. This therefore indicates that if Mr. Guidry’s truck had not been involved in this wreck he would have made these trips. Guidry testified that he paid his driver $12.00 per trip and computed his total expenses, including the salary of the driver, at $30.00 per trip, thus leaving a net profit per trip of $70.00. Therefore, since the truck was out ten days, he seeks $700.00 in damages. We feel that this amount is not out of line and is therefore justified.
We find no error on the part of the Trial Court in its dismissal of the defendants’ reconventional demand, but we do find error on the part of the Trial Court as to its dismissal of the main demand by John Guidry. Therefore, for the above and foregoing reason, the judgment of the Trial Court is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, John Guidry, and against the defendant, Eldon Covington, in the sum of $1,453.34, with legal interest thereon from the date of judicial demand until paid, and for all costs.
Judgment reversed.