GULOTTA, Judge.
In this intersectional accident case, plaintiff, Leona Monteleone Russo, appeals the dismissal of her damage suit. We affirm.
The accident occurred at approximately 2:45 p.m. on February 19, 1982, at the controlled intersection of So. Carrollton and So. Claiborne Avenues in the City of New Orleans. At the scene, So. Carrollton is a six-lane, divided North-South throughfare crossing the six East-West lanes of So. Claiborne, also divided by a wide median or “neutral ground.”
The defendant vehicle driven by Karl Frankhouser, was traveling in the center, eastbound lane of So. Claiborne toward downtown New Orleans, and was favored with a green light. Plaintiff Russo was headed southbound in the left, median lane of So. Carrollton towards the Mississippi river. While attempting to avoid blocking the path of a police. car with activated lights and sirens behind her in the left lane, Russo entered the eastbound lanes of So. Claiborne against the red light and collided with Frankhouser’s vehicle approaching from her right. After impact, Russo’s car veered and rolled to the left, completely traversing the eastbound lanes of So. Claiborne. The police car behind Russo did not hit either car.
Russo filed suit alleging both the negligence of the defendant driver Frankhouser and the City of New Orleans. After trial on the merits, a jury exonerated Frank-houser and found Russo 100% at fault for the accident. In accordance with the verdict, the trial judge dismissed Russo’s suit against Frankhouser, and further dismissed her claim against the City.
Appealing solely on the issue of Frank-houser’s liability, Russo contends that Frankhouser’s negligence in failing to stop his vehicle before entering the intersection in response to the lights and sirens of the approaching emergency vehicle was the sole proximate cause of the collision. She further argues that she was free of negligence because she had only inadvertently entered the eastbound lanes of So. Claiborne when faced with the “sudden emergency” of removing herself from the path of the following police car. Alternatively, Russo asserts the right to partial recovery of damages under the doctrine of comparative negligence.
The jury had the benefit of the testimony of four eyewitnesses to the accident: plaintiff, the' defendant driver and his guest passenger, and the police officer. Plaintiff’s version of the accident was in direct conflict with that of the other witnesses.
Russo testified that she was stopped behind another car at a red light in the left, southbound lane of So. Carrollton at its intersection with the westbound lanes of So. Claiborne when the police car approached behind her with lights and sirens activated. Because other cars were stopped in the lanes to their right, Russo and the car in front of her both crossed the westbound lanes against the red light to clear the way for the following police car.
According to Russo, after reaching the safety of the median area separating the opposing lanes of So. Claiborne, the vehicle in front of her moved into the center lane of So. Carrollton and stopped. To remove herself likewise from the left lane, Russo moved in front of this other car and also stopped but protruded beyond the median into the left eastbound lane of So. Clai *333 borne where she collided with Frankhouser approaching from her right.
In contrast to Russo’s version, George Campbell, who was driving the police car behind her, testified that Russo’s car was the only one stopped in front of him at the red light. According to this witness, Russo safely crossed the westbound lanes of So. Claiborne against the light, but continued slowly traveling in the left lane across the median area and into the eastbound lanes of So. Claiborne, without moving to the center lane or stopping before colliding with Frankhouser’s ear. Officer Campbell testified there were no other cars on So. Carrollton in the median area and that Russo “could have easily moved over to the right” to allow him to pass in the left lane. Although Campbell saw a car stopped in the left eastbound lane of So. Claiborne before the accident, he did not see Frank-houser’s car in the center lane until impact.
Karl Frankhouser, the defendant driver, testified that he was traveling at a speed of 30-35 MPH eastbound on So. Claiborne and had been favored with a green light for at least 200 feet before crossing So. Carroll-ton. At a distance of about 10-20 ft. before the intersection, Frankhouser heard sirens but saw no flashing lights. In response, Frankhouser took his foot off the accelerator, but had “no time” to ascertain the location of the emergency vehicle. When he saw Russo’s car in the intersection he applied his brakes, but could not avoid the accident. According to Frank-houser, Russo’s car was the only one in the median area, and he did not see the police car until after the accident.
Frankhouser’s version of the accident was largely corroborated by his guest passenger Danny Reed. Before impact, however, Reed had seen the police car behind Russo in the median area and had assumed that “the policeman was ... pulling the lady over....” He testified that Russo was “moving ... very slowly” as if “she was coming to a stop ... to wait for the light”. When he next saw Russo before the collision, shé was traveling much faster.
We find no error in the jury’s exoneration of Frankhouser from liability. The evidence supports its finding, based on credibility determinations, that Frankhouser was free of any fault.
As Frankhouser approached the intersection having been favored with the green light for 200 feet, he could assume that motorists on the intersecting cross street would obey the traffic signal and stop. See Youngblood v. Robison, 239 La. 338, 118 So.2d 431 (1960); Putt v. Daussat, 381 So.2d 955 (La.App. 4th Cir.1980). Under these circumstances, his failure to avoid a collision with Russo, who invaded his lane of traffic, does not constitute negligence.
It is also true, however, that a motorist has a statutory duty to yield to an approaching of an authorized emergency vehicle.[1] Nonetheless, this duty to yield arises only when the motorist observes or hears, or should have observed or heard, the audible and visual warning of such vehicle. See Cassity v. Williams, 373 So.2d 586 (La.App. 3rd Cir.1979); Calvert Fire Ins. Co. v. Hall Funeral Home, 68 So.2d 626 (La.App. 2nd Cir.1953).
In the instant case, Frankhouser testified that he first heard the police siren only 10-20 feet before the intersection and did not have time to ascertain its location. Evidence is lacking that he should have observed the approach of the police car sooner. Indeed, although Officer Campbell testified that another eastbound car in the left, median lane of So. Claiborne had stopped before the intersection, Campbell *334 did not see Frankhouser's vehicle until impact.
It must also be borne in mind that Frankhouser collided with Russo’s car, not the emergency vehicle driver by Officer Campbell. Frankhouser’s duty to yield was owed to the police car, not to Russo. The risk encompassed by breach of that duty was a collision with the emergency vehicle, not a private vehicle negligently driven by another motorist. Under a duty-risk analysis, therefore, Frankhouser’s failure to stop before the intersection was not the legal cause of the collision with Russo.
We likewise reject Russo’s argument based on the “sudden emergency” doctrine. This doctrine relieves a party of negligence if he is suddenly placed in a position of imminent peril without sufficient time to consider and weigh all the circumstances or determine the best means to avoid the impending danger, unless the emergency is brought about by his own negligence.. See Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972).
Although Russo was faced with the situation of yielding to a following police car, the sudden emergency doctrine does not apply in her case since an obviously safe alternative was available to her. A reasonable inference from Officer Campbell’s testimony is that Russo could easily" have moved into the center lane of So. Carrollton and stopped in the median area short of entering the eastbound lanes of Claiborne to allow the police car to pass. Instead, Russo continued moving in the left lane against the red light and into the path of Frankhouser’s vehicle. Furthermore, Russo’s testimony that she had stopped before the collision simply does not comport with the undisputed physical evidence that her car rolled across the eastbound lanes of So. Claiborne after impact. Under these circumstances, we cannot say that the jury erred in finding Russo solely negligent.
In so holding, we distinguish Wiley v. Sutphin, 108 So.2d 256 (La.App. 2nd Cir. 1958), relied on by plaintiff. In Wiley, a defendant motorist, upon hearing the approach of an emergency vehicle, pulled to the right and parked until it passed. As she attempted to re-enter the stream of traffic, she heard a second siren but could not move to the right again because of the presence of a parked car. Confronted with that situation, she stopped her car, although it protruded at an angle beyond the center line of the street and into the lane of travel of plaintiff’s oncoming vehicle. The Wiley court held that defendant’s action in stopping her vehicle was, under the circumstances, an “act of prudence” since it was impossible for her to take a position near the curb on her right-hand side of the street on hearing the siren.
In the instant case, unlike Wiley, Russo had a reasonable and safe alternative to remove herself from the path of the following emergency vehicle without invading Frankhouser’s path in the eastbound lanes of So. Claiborne. The Wiley decision, therefore, is clearly distinguishable.
Accordingly, the judgment is affirmed.
AFFIRMED.'

. LSA-R.S. 32:125(A):
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, ... the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed,
[[Image here]]