535 So.2d 1020 (1988)
Melinda CHRISTAW, Plaintiff/Appellant,
v.
Everett H. O'BRYANT, et al., Defendants/Appellees.
No. 19970-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
Writ Denied January 13, 1989.
*1021 C. Don McNeill, Shreveport, for plaintiff/appellant.
Mayer, Smith & Roberts by Richard G. Barham, Shreveport, for plaintiff in intervention, Cumis Ins. Soc., Inc.
Lunn, Irion, Johnson, Salley & Carlisle by Jack E. Carlisle, Jr., Shreveport, for defendants/appellees.
Before HALL, C.J., and MARVIN and NORRIS, JJ.
HALL, Chief Judge.
In this action arising out of a collision at an intersection controlled by traffic lights, plaintiff Melinda Christaw appeals the decision of the trial court rejecting her demands for personal injury and property damage and rendering judgment in favor of defendants Everett H. O'Bryant and State Farm Mutual Automobile Insurance Company on their reconventional demand for damages to the O'Bryant vehicle. The trial court found that O'Bryant turned left on a green arrow in his favor and was not negligent, thereby making comparative negligence inapplicable. Appellant argues that the trial court erred in not finding O'Bryant negligent in the operation of his vehicle when he made a left turn in front of her car. She further argues that even if she was negligent, principles of comparative negligence should be applied. Finding no manifest error in the trial court's decision, we affirm.
The accident occurred at about 10 a.m. on September 8, 1986 at the intersection of North Market and Ravendale Street. North Market Street at the intersection of Ravendale (which is Martin Luther King Drive west of North Market Street) consists of four lanestwo lanes northbound and two lanes southbound. The four lanes are separated by a neutral ground and there is an additional lane on each side of the intersection for making left turns. The intersection is controlled by three electric semaphore traffic signals on each side of the intersection which were operating properly at the time of the accident. Two signals on each side of the intersection control north and southbound traffic while the other signal controls left turns east on Ravendale and west on Martin Luther King Drive. The posted speed limit on North Market Street at the intersection is fifty miles per hour.
As appellant was driving her 1985 Volkswagen northbound on North Market Street, O'Bryant, driving a 1985 Chevrolet Suburban southbound on North Market Street, turned left onto Ravendale into the path of appellant's vehicle. Appellant steered to the right but was unable to avoid him. Appellant's front end struck O'Bryant's passenger door and the area behind it. The point of impact was in the approximate center of the northbound lanes of North Market Street in the middle of its intersection with Ravendale. Appellant was taken to an area hospital where she was treated and released.
At trial appellant and O'Bryant disagreed as to which of them had a green traffic signal when the accident occurred. Each presented witnesses testifying on their behalf. The court found that O'Bryant had the green arrow and was not negligent in proceeding to turn through the intersection.
Appellant testified that she was travelling thirty-five miles per hour northbound on North Market Street when the accident occurred. She initially stated that she was eleven to twelve feet from the light when she first saw that it was green but later changed the distance to five car lengths. She stated that O'Bryant hesitated a little bit and as soon as she was right under the traffic lights he pulled into the intersection.
Gregory Ferguson, appellant's former boyfriend and a guest passenger in appellant's vehicle, testified that the light was green when appellant went through the intersection. He stated that they were travelling forty-six miles per hour in the inside northbound lane next to the left turn lane when the accident occurred. Ferguson stated that when he saw O'Bryant's vehicle, it was just like it came out of nowhere and all he knew was that it came out of the left-hand side of the light. He remembered that there were vehicles behind *1022 O'Bryant's vehicle but they did not follow him.
Henry Cook, who was in the northbound left turn lane of North Market Street when the accident occurred, testified that he was waiting on his arrow when he noticed appellant's vehicle proceed under the green light at a high rate of speed. He initially testified that appellant was driving in the lane next to him but later stated that she was in the right outside lane. He testified that when he first got to the light it was red, then it turned green but he still had to wait on the arrow to turn left on Martin Luther King Drive. He stated that after O'Bryant pulled up to the light and stopped he slowly made a left turn. Cook did not think O'Bryant should have turned because he was still waiting on his arrow. Cook described the light sequence northbound as red, green, then at some point afterwards the green arrow appears.
O'Bryant testified on his own behalf and presented the testimony of Chester Maynard and H.L. Cater.
O'Bryant stated that as he approached the intersection the southbound traffic had the green light. He waited eight to ten seconds before he got the green arrow. O'Bryant glanced down the highway at approaching traffic but did not see appellant's vehicle. After the arrow turned green he proceeded twenty to twenty-five feet at a speed of less than ten miles per hour when the impact occurred. He stated that his vehicle was two-thirds across the intersection when the accident happened.
Chester Maynard stated that he was facing west on Ravendale under a red light waiting to proceed north on North Market Street. His vehicle was positioned at the northeast corner of the intersection and he could see all the southbound signals from this point. He remembered seeing O'Bryant's vehicle turn left on the green arrow and proceed twenty-five to thirty feet prior to impact. His attention was directed to the southbound signal because he knew that when the southbound arrow came on the northbound traffic would have a red signal and he could safely proceed north on North Market Street.
H.L. Cater, who has worked for the Traffic Engineering Department for the City of Shreveport for fifteen years, testified as to the light sequence at the intersection. Initially when the lights for southbound traffic on North Market Street are red, the northbound lanes have the green arrow for thirteen seconds permitting a left turn west on Martin Luther King Drive and the other northbound lanes have a green signal. Next the green arrow is dropped for 4½ seconds, then ends with a green signal to proceed northbound. At that point, the southbound traffic gets a green signal for 45 seconds. The green signal for northbound traffic remains on for a total of 46.8 seconds, followed by a yellow light for 4 seconds, then red. At the time the northbound light turns red, the green arrow southbound comes on for 11.7 seconds to permit traffic southbound to turn left on Ravendale. At the end of the southbound arrow, all southbound signals go from yellow to red.
A left turn is a dangerous maneuver and a driver has a duty not to attempt the turn until he ascertains it can be completed safely. A left turning motorist is required to exercise a very high degree of care, even where the motorist executes his turn on the authority of an illuminated left turn signal. Strickland v. Pitts, 506 So.2d 1360 (La.App.2d Cir.1987); Tipton v. Menard, 467 So.2d 126 (La.App.3d Cir.1985). Once the plaintiff has established that the defendant was attempting to make a left turn when the accident occurred, the burden of proof then shifts to the defendant to absolve himself of liability. This burden remains despite the existence of a left turn signal at the intersection in question. The defendant may discharge his burden by proving that the left turn arrow was illuminated. Strickland v. Pitts, supra. Foreman v. State Farm Mutual Automobile Insurance Co., 416 So.2d 258 (La.App. 3d Cir.1982).
Generally, a motorist who approaches and enters an intersection on a green light is not required to observe traffic facing a red or stop signal at that crossing, but he may rely on the assumption *1023 that motorists on the intersection street will obey the traffic signal and stop. Youngblood v. Robison, 239 La. 338, 118 So.2d 431 (1960); Putt v. Daussat, 381 So.2d 955 (La.App.4th Cir.1980). Although the motorist may assume that an electric semaphore signal will be obeyed by other motorists, he nevertheless must continue to exercise the caution that is commensurate with the circumstances as he aproaches and enters the crossing. Putt v Daussat, supra.
We agree with the trial court's conclusion that defendants proved by a preponderance of the evidence that the green arrow was illuminated when O'Bryant made his left turn. Furthermore, we find that O'Bryant exercised the degree of caution necessary under the circumstances for making a left turn.
The trial court's finding that O'Bryant had the green turn arrow before he commenced his left turn is supported by the testimony of both O'Bryant and Maynard. Their testimony is straight-forward, direct and convincing.
On the other hand, the testimony of appellant, her passenger, and Cook contains discrepancies or weaknesses which detract from the weight to be given to their testimony. Cook had the light sequence wrong and was confused about which lane appellant was in. Ferguson, as a passenger, did not have reason to be observing the lights as carefully as did the drivers of the vehicles at the intersection. Appellant gave inconsistent statements concerning her distance from the light when she saw it. Her description of O'Bryant's waiting at the light and then suddenly pulling into the intersection while she was directly under the traffic lights do not coincide with the fact that O'Bryant's vehicle was almost through the intersection when the impact occurred.
This was primarily a credibility call which the trial court made in defendants' favor. The trial court's determination is supported by the evidence and is not clearly wrong.
The finding that O'Bryant had the green arrow when he started his turn necessarily requires a finding that the light for the northbound traffic was red when appellant entered the intersection and that she was negligent. O'Bryant, however, was under a duty to exercise due caution even though he had the green arrow.
After the left turn arrow turned green, O'Bryant proceeded slowly to make his left turn, and was hit after going twenty-five to thirty feet to at least the center of the northbound lanes. Appellant, who was travelling at a fast rate of speed according to all witnesses, at least thirty-five to forty miles per hour, was a considerable distance back from the intersection at the time O'Bryant got the green arrow and started his turn. Appellant travelled at least four times as far as O'Bryant did in the interval between the commencement of the left turn and impact which would place appellant at least 120 feet from the point of impact at the time the light turned red for her. O'Bryant could not be expected to have observed appellant at that distance from the intersection, and if he had observed her, he would have been entitled to presume that she would stop for the red light facing her at that time.
Appellant was negligent in going through the intersection on a red light. O'Bryant was not negligent in making his left turn on a green left turn arrow when appellant's vehicle was not in or near the intersection at the time he commenced his left turn.
The judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.